GLOBE BANK *versus* OTIS SMALL.

If at the time when an accepted bill, payable at a fixed time, and guarantied to be paid according to its terms, became payable, the acceptor was solvent, and so continued to be for four months thereafter, and then became insolvent; and no notice of the non-payment was given to the guarantor during the next four years ; he is by such neglect, discharged from the payment thereof.

ASSUMPSIT upon an instrument in the terms following : —

" Bangor, Oct. 11, 1836. I hereby guaranty the punctual payment of S. G. Glidden's acpt. and John A. French's acpt. each for $141,46, dated Oct. 1, 1836, in sixty days, payable at Suffolk Bank, Boston.                    " Otis Small."

The plaintiffs introduced in evidence the writing declared on ; also the acceptances of Glidden and French referred to

therein; and a protest showing a demand on the acceptors and notice to the plaintiffs and the other parties to the note; but there was no evidence, that any notice was given to Small before the commencement of this suit, on May 4, 1840. Glidden had attachable property of greater amount than this demand until Aug. 1837, after which time he became insolvent. French had attachable property until the spring of 1837, when he failed, and has since been insolvent.

A nonsuit was ordered, with the consent of the plaintiffs, which was to be taken off, and a new trial granted, if the plaintiffs, in the opinion of the Court, could maintain the action.

*S. H. Blake,* for the plaintiffs, said that this was not a contract of guaranty in the commercial sense of the term, but an original undertaking. It is entirely immaterial what words are made use of, if the meaning conveyed may be ascertained. This was an absolute undertaking to see the note paid at the time stated. The defendant therefore was liable without notice. 8 Johns. R. 39 and 376; 15 Johns. 425; Fell on Guaranty, 17; 3 Hill, 584; 19 Wend. 202; 20 Johns. R. 365; 7 Peters, 127; 1 Hill, 258.

But if Small is to be regarded as a guarantor merely, then we have adopted in this State the distinction of absolute and conditional guaranties. This was of the former kind, and no notice was necessary. *Cobb* v. *Little,* 2 Greenl. 264; *True* v. *Harding,* 3 Fairf. 193; 7 Conn. R. 523; 6 Bingh. 94; 1 Stark. R. 14; 20 Johns. R. 365; *Norton* v. *Eastman,* 4 Greenl. 526.

He commented upon the cases *Read* v. *Cutts,* 7 Greenl. 186, and *Oxford Bank* v. *Haynes,* 8 Pick. 423; and contended that those cases were not to be considered as overruling the principle established in *Cobb* v. *Little,* and in the other cases cited by him, but might be distinguished therefrom; and that if they were inconsistent, the true principle was laid down in the cases cited by him. In this discussion he cited as additional authority, 24 Wend. 35, and 1 Hill, 259, in which it is said, that the decision in *Oxford Bank* v. *Haynes,* " was

based on a rule, as to the mode of fixing guarantors, peculiar to that State."

*Jewett* and *Crosby,* for the defendant, contended that the paper signed by the defendant, was a mere collateral undertaking, to pay conditionally the debt of another, and not an original undertaking.

It is the well settled law in Massachusetts and Maine, as well as in several other States, and in the courts of the United States, that where the payment of a note or draft, payable on time, is guarantied according to the terms of the paper, then it is necessary for the holder of that paper, in order to recover of the guarantor, not only to take the proper steps, when it becomes payable, to fix the liability of the proper parties to it, but also to give notice of non-payment to the guarantor within a reasonable time, provided the parties to the paper were solvent when it became payable, and became insolvent before the notice was given. *Read* v. *Cutts,* 7 Greenl. 186 ; *Oxford Bank* v. *Haynes,* 7 Pick. 423 ; *Cannon* v. *Gibbs,* 9 Serg. & R. 202 ; *Douglass* v. *Reynolds,* 7 Peters, 127.

The opinion of the Court was by

Whitman C. J. — The case of *Gamage* v. *Hutchins,* 23 Maine R. 565, would seem to be decisive, that the defendant in this case was, by his guaranty, liable only in case the plaintiffs were careful to give him notice of non-payment, before any injury could have arisen to him for the want of it. The guaranty in that case was absolute in terms ; as much so as in this. But in both the guaranty was collateral. There was, in each, a debt due or incurred by some other person ; and the guaranty was, that it would be paid as had been agreed. Where considerable time had elapsed, after the debt had become due, the guarantor had a right to presume the debt had been paid, if not notified to the contrary ; and, if the laches of the creditor continued till the condition of the original parties to the security had become altered from ability to pay, to utter inability, there would be much good reason for allowing the loss to fall upon the creditor.

The plaintiffs in this case received regular notice of the dishonor of the bills guarantied, and took no measures to secure the amount due on them, excepting simply to give the acceptors notice of non-payment. To the defendant no notice was given of the dishonor. The acceptors of the drafts remained in good credit, or had attachable property, for some months after they became payable. If the defendant, therefore, had been seasonably apprised, that he was relied upon for payment, he might have secured himself. As it is, it seems, if compelled to pay the amount due, he would have no resource for reimbursement.

The counsel for the plaintiffs relies, with much confidence, upon the case of *Cobb & al.* v. *Little*, 2 Greenl. 261 ; and urges that the case at bar is similar to that ; and at first blush there would seem to be a resemblance. But, in that case, the guaranty was made by Little, without reference to the time when the note guarantied would become payable. The note itself was payable in six months from the 30th of April, 1817. On the 3d of June, in the same year, Little guarantied it should be paid in six months from that time. He did not, as did the defendant here, guaranty punctual payment, according to the terms of the security. He, therefore, had no reason to expect a demand of payment upon the maker on the day he, Little, had agreed the debt should be paid. He alone, and not the maker, had stipulated for payment at that time. He alone, therefore, might be expected to look to it, and see that it was paid according to his agreement. This peculiarity was noticed by the late C. J. Mellen, in *Read* v. *Cutts*, 7 Greenl. 186. Little, perhaps, might be regarded as an original promisor, and as undertaking to guaranty the payment, without reference to or reliance upon payment by the maker. In the case before us the guaranty was, that the acceptances should be promptly met by the acceptors. An agreement in such case, to pay at all events, without reference to or reliance upon the acceptors could not be inferred. His warranty was that the acceptors would pay as they were bound to do ; and not that

he himself would pay, without regard to whether they did so or not.

The cases cited and relied upon by the counsel for the plaintiffs, from the New York Reports, may not be reconcilable with the decisions in Maine, Massachusetts, Pennsylvania, and in the S. C. of the United States, as contained in *Oxford Bank* v. *Haynes,* 8 Pick. 423 ; *Read* v. *Cutts,* above cited ; *Gibbs* v. *Cannon,* 9 Serg. & Rawle, 198 ; and *Reynolds & al.* v. *Douglass & al.* 12 Peters, 497. But we think that these cases fully sustain the decision in *Gamage* v. *Hutchins,* which does not seem to be distinguishable in principle from the case at bar. Indeed the learned Chancellor Kent, although as intimately acquainted with the law as administered in New York as any one ever has been, and whose legal acumen is scarcely surpassed by that of any man now living, would seem, in his commentaries, vol. 3, p. 123, to view the law as to guarantors no otherwise, than it is recognized in this State.

*Nonsuit confirmed.*