## ALEXANDER MONTGOMERY *v.* KELLOGG & SANDUSKY.

1. LETTER OF CREDIT—GUARANTY OF PAYMENT FOR FUTURE ADVANCES.—M. gave to K. & S. a written statement that if they would give C. credit for $400 worth, or a less quantity, of supplies, to be paid for out of the first proceeds of C.'s crop, he (M.) "would see the amount paid, as might be agreed" between K. & S. and C. :— *Held:* That M.'s liability was conditional only, and that in order to fix his liability, he was entitled to have had notice—1st. That his offer was accepted by K. & S. ; 2d. Of the amount of the credit ; and 3d. That C. had failed in payment. *Aliter,* where the guaranty is of an already existing, specific demand ; as, for example, a promissory note. In such case the guarantor, knowing precisely what he undertakes, and the measure of his responsibility, no notice is necessary.

2. NOTICE—TIME.—The promptness of notice required by the law merchant of the dishonor of commercial paper is not required in the case of a mere guaranty. If the notice be within a reasonable time after default it will be sufficient—unless, indeed, there be some reason .potent enough to render the notice valueless to the guarantor—as for example, the absolute and hopeless insolvency of the principal debtor.

3. SAME—RULE AND PRINCIPLE.—It is impossible to lay down any general rule as to the time after default, within which the notice shall in all cases be given. Every case has its own peculiar features and complications which must determine the question of time. But the basis of every rule is, Did the want or delay of notice injure the guarantor ?

4. SAME—ILLUSTRATION.—In the case at bar, the guaranty was for payment with "first proceeds of the crop." It was in proof that about the time the account was made, or within ten days afterward the guarantor had notice of the amount of the credit, and that it was on the faith of his guaranty that the credit had been given ; and that while the crop was being gathered, and before sold, he had notice of the account being still due and unpaid. *Held:* That these facts were sufficient notice for the guarantor's protection, and to fix his liability.

5. FORM OF NOTICE.—The notice, whether of acceptance or of default of payment, need not be in form ; but may be inferred from facts and circumstances.

6. NATURE AND CONDITION OF GUARANTOR'S LIABILITY.—On the acceptance of the guaranty, and notice of default of the principal, the guarantor's liability becomes fixed and absolute with an immediate right of action against him as an original debtor.

Error to the circuit court of Adams county.   SMILEY, J.

*Yergers,* for plaintiff in error.

We contend in behalf of plaintiff in error, that the demurrer should have been sustained for the reasons assigned. As to the meaning of the letter of credit, the first point arises under the word "supplies." "H. C. Coody wishes to get some supplies." The declaration avers this to mean, "goods wares, and merchandise." The legal import of these words

is well understood by the profession, but the term " supplies " is of recent introduction into common use, and among planters and merchants is understood to mean those articles necessary to the cultivation of a crop.   The letter states that the money was payable " out of the first proceeds of the crop." These words are important and constitute a part of the contract.   These words, " out of," indicate a fund that was to be charged with the payment, and contemplate a pledge of the crop.   Such being the plain understanding of the writer, it was to his injury to furnish supplies without securing such a pledge of the crop, as would insure to the writer's benefit, in case he paid the debt.

3rd. The letter is not a continuing guarantee.   The language is, that "Coody proposes to purchase some supplies of you."   It indicates that he wanted them then, not from time to time for an indefinite period.   The terms of the letter purport a present want, and not future probable wants.   But one sale of articles was contemplated by the writer, and he only agreed to be responsible for the supply of that want. The account filed, instead of being for supplies to enable Coody to make his crop, is almost entirely for wearing apparel, principally for female apparel, groceries, etc., for family use. The guaranty was to assist Coody in making a crop, and plantation supplies were intended.

The first point arising under the proof, is the proof of the acceptance and the credit given.   R. S. Coody testifies that defendants in error refused H. C. Coody credit for supplies, unless plaintiff in error would guarantee the payment.   One of the plaintiffs below wrote the letter addressed to their firm guaranteeing to the amount of $400.   He handed the paper to the plaintiff in error, went into another room, and when he returned plaintiff in error said " there it is."   He took it up and carried it to his brother, H. C. Coody.   This testimony was vague and uncertain, calculated to make a false impression without stating a falsehood; to make it appear that the preparing of the letter by Kellogg and the signing by the defendant below were simultaneous acts.   H.

C. Coody is more definite. He says the plaintiffs below agreed to let him have supplies if the defendant below would guarantee the payment. Kellogg wrote the letter, and he sent it by his brother Robert, to get it signed. Witness then took it to Yazoo City and delivered it to the plaintiffs below. There is nothing to show that the defendant below knew the letter had been prepared by Kellogg or other person under his authority, for his signature. The defendant below, having no knowledge of any previous understanding of these parties, could not know that the guaranty had been accepted.

The testimony of the defendant below states that R. S. Coody told him when he asked him to sign the letter, that it had been prepared for Eugene Roach to sign, and said Roach being absent, he requested defendant to sign it. This evidence, also, fixes the place of signing at Prairie Place, twelve miles from Yazoo City. This evidence, also, negatives the idea that all those acts were of such simultaneous character as to dispense with notice, or to raise the presumption of notice. R. S. Coody says that at the opening of the account, defendant below had notice of the contract on which it was made, and on whose credit. That the defendant below asked him if they were getting goods and supplies upon the paper he signed, and witness replied, "Yes, they did." Can't recollect the date when defendant had such knowledge, but it was within ten days after the opening of the account. H. C. Coody is not so bold, but thinks defendant below must have known that he was getting the supplies, as defendant knew he could not get them without the paper signed by the defendant. But this is the mere conjecture of this witness, and there is no evidence that plaintiffs sold the articles to Coody. There is direct evidence that they did get supplies from Eugene Roach, as shown by Mr. Key's deposition.

When was Coody in default? It is clear the account was closed November 1, 1866. As nearly all the rules applicable to promissory notes apply to letters of credit, the guarantor standing in the attitude of an indorser, except that a little

more latitude is allowed in giving notice to a guarantor. Russell states that the demand for payment was made sometime in November; notice of non-payment was given immediately thereafter; that the notice was left with Harrison & Hyatt about the last of November or the first of December. The plaintiff admits that this notice was dated December 12, 1866. Was the demand of payment within reasonable time?

Notice of defalcation of the defendant below: Russell states in his answers to the eighth and ninth interrogatories, that he gave notice of Coody's failure to pay, by letter addressed to defendant, and left at the counting-room of Harrison & Hyatt, Yazoo City, as that was the place from which his letters and papers were forwarded to him, there being no mail communication to his residence—Prairie Place. There is no rule of law to sustain this as actual or constructive notice. This notice was insufficient without proof that it had been actually received by defendant.

Such is the substance of all the testimony, and, upon it, it is respectfully insisted that the verdict is clearly against the law and the evidence. Walworth v. Thompson, 6 Hill, 540, is a strong case on the point that the letter of credit designated the first sale of cotton as the time of payment. But the contract with Coody stipulated for payment on the first of November. Such a departure from the terms proposed, discharges the guarantor. Also, that the letter was limited to one transaction. Anderson v. Blaseby, 3 Denio, 512; Whiting v. Groat, 24 Ward, Ohio R., 82; Hunt v. Smith, 17 Ward, 179; Ten Eyck v. Vanderpool, 8 J. R., 119. As to notice of credit given, see Norton v. Eastman, 4 Greenl., 521; Rapleby v. Bailey, 3 Conn., 428.

*Winchester & North,* for defendants in error.

Where the parties are together, or are so near to each other as to be able to act, and do act and fix the terms of the contract contemporaneously; or where, as in this case, the usual order and progress of events is inverted, and the creditor proposes the terms of the contract for the acceptance of the

guarantor, and the same are then accepted by him; the con-. tract, by this unity of assent, is at once consummated to a perfect obligation by all of its parties. Howe v. Nichols, 22 Maine, 175; Wildes v. Savage, 1 Story, 22; 2 Am. Leading Cases, 75.

If it was agreed, as predicated by the conclusions of proof, supposed in the third instruction for the plaintiffs below, between the plaintiffs and their proposed debtors, that the former would sell goods to the latter upon the guaranty of the defendant, and that thereupon the plaintiffs drafted the writing, to be signed by the defendant, and that he, with a knowledge of these facts, did sign and redeliver the writing, then there was in the initiatory events of the contract, an acceptance of the guaranty by the creditor, and in the concluding act a notice of this acceptance to the defendant.

It was not pretended in the court below, and it is not shown by the record here, that any of the facts embodied in the third instruction for the plaintiffs were untrue. All of them were not only without contradiction in the evidence, but were, and must now be taken as admitted.

The third instruction for the plaintiffs involves all that was essential to the first; and it is admitted that it contains a proposition of law of questionable soundness; the facts could not have been found without a finding of every fact, supposed in the first instruction, necessary to a verdict for the plaintiffs. If the motion for a new trial be put upon the ground of a preponderance of evidence against a notice of acceptance, or of a conflict of evidence, that should have inclined the jury against the party having the burden, it must be replied that it was within the province of the jury to decide thereon, and that the verdict cannot, upon these grounds, be disturbed. Kelly v. Miller, 39 Miss., 58; Holden v. Blaxum, 35 Miss., 383; Wood v. Gibbs, 35 Miss., 581.

There is .no prescribed form, manner, or time for giving notice to the guarantor of the acceptance of his undertaking, and it may be given by the debtor or any party to the transaction. All that the law demands is, that the guarantor shall

have a knowledge of the acceptance within a reasonable time for his protection by any available means after he is supposed to become bound by the undertaking, and the jury must have found the existence of this knowledge within the required period, from the facts supposed in the third instruction, if, in fact, their verdict was induced by, or depended upon its direction. 1 Parsons on Contr., 502; Oaks v. Weller, 16 Vermont, 63; Train v. Jones, 11 ib., 444; Long v. Adams, 22 ib., 160; Reynolds v. Douglass, 12 Peters, 497; 2 Am. Lead. Ca., 52; 25 Ala., 139; 9 Rich. S. C. Rep., 335.

The defendant's undertaking was that Coody should pay the demand without defalcation, the moment it became due, and his obligation became actionable by this default at this time, without demand or notice. His undertaking was original, independent and absolute. Baker v. Kelly, 41 Miss., 705; Wren v. Pearce, 4 S. & M., 97; Thrasher v. Ely, 2 S. & M., 147; 3 Kent's. Com., 123; 2 Am. Lead. Ca., 92.

Simrall, J.:

Suit was brought by Kellogg & Sandusky, commercial partners, on the following writing, to-wit:

Prairie Place, 1st June, 1866.

Messrs. Kellogg & Sandusky:

*Gentlemen*—Mr. H. C. Coody proposes to purchase some supplies of you, payable out of the first proceeds of his crop. In case you should let him have them, I will see the amount of his account with you paid, as he may agree with you, to the amount of four hundred dollars, or less, if he should purchase less. Yours, etc.,

Alex. Montgomery.

The several questions made in this court arise out of the rulings of the circuit court, in overruling the defendant's demurrer to the declaration, in the granting and refusing of instructions to the jury, and in denying the motion for a new trial.

1st. It is maintained by the plaintiff in error, that he had no notice or no sufficient notice of the acceptance of the letter of credit, or guaranty by Kellogg & Sandusky.

2d. No sufficient and timely notice of the default made by H. C. Coody in the payment for the goods taken up by him with Kellogg & Sandusky, and the non-averment or insufficient statement of these facts in the declaration, make it obnoxious to demurrer.

The allegation in the declaration is, " of all which, said premises, the defendant had due notice, to-wit: on," etc. In Willis v. Staten, 5 S. & M., 353, the averment was " of all which, the said defendant afterwards had due notice." The suit was upon a letter of credit, for a liability to be incurred on its faith. It was held that the allegation of notice was sufficient.

The important inquiries are, what, if any notice of the acceptance of the guaranty, was the guarantor entitled to? and what notice of the default made by Coody, in paying for the goods? And was the law of the case properly laid before the jury in the instructions of the court? In Thrasher v. Ely, 2 S. & M., 147, the doctrine is recognized that if the guaranty is of a specific existing demand, as a promissory note or other evidence of debt, then no notice of default in payment on the part of the principal debtor, is required. In such case, the guarantor knows precisely what he undertakes and the measure of his responsibility. The principle seems to be, that if the guaranty is absolute in its terms, definite as to amount and extent, notice is dispensed with.

But if the guaranty be for future advances, credits, or payments, it is the duty of the party making the advances, to give notice to the guarantor of his acceptance, and of his consent to make the advances on the faith of the guaranty. This is very clearly settled, as the rule in the supreme court of the United States. Burrell v. Clarke, 7 Cranch. 69 ; Edmundson v. Drake, 5 Peter's Rep., 629 ; Douglas v. Reynolds, 7 Peters 113 ; Lee v. Dick, 10 Peters, 482 ; Adams v. Jones, 12 Peters, 207 ; Reynolds v. Douglas, 12 Peters, 497.

If the engagement be to make advances on future contingencies, which may or may not happen, in addition to the general notice, of acceptance of the guaranty, and a purpose

to act on its faith and credit; it may be necessary also, to advise the guarantor of the occurrence of the contingencies and the advances made, for otherwise, he might not know whether any use were made of the guaranty, and might, because thereof, loose opportunity to obtain indemnity from the principal debtor. Crumer v. Higginson, 1 Mason, 323.

In Douglas v. Reynolds, already cited, it was declared in reference to a continuing guaranty, for acceptances, endorsements and credits, that it was but reasonable when the whole transactions were ended, notice of the amount claimed from the guarantor should be given within a reasonable time afterwards.

The purpose of the notice is that the guarantor may at once set about securing himself against loss. When the letter of credit, therefore, is continuing, and indefinite as to amount, the reason is stronger for a prompt notice of a default in the principal debtor and its amount. The principles which have been stated and illustrated in the adjudications of the supreme court of the United States have been accepted here and recognized. 4 How., 231; 5 S. & M., 347. The character of Montgomery's letter of credit, or guaranty, entitled him to notice that it was accepted by the plaintiffs, and that they would act under it; and also, after the transaction was closed, and the debt became due from Coody, that he had failed to make payment. And this last information must be communicated within a reasonable time after default made, unless, indeed, there was some reason potent enough to relieve of the duty of imparting notice. For it should be borne in mind that the object of the information is to enable the guarantor to protect and save himself from loss. If notice, by no possibility, could be of service to him, as where the debtor was absolutely and hopelessly insolvent, then it seems it may be dispensed with. It must be observed also, that the same promptness is not exacted in giving notice as the Law Merchant demands of the dishonor of commercial paper. The latter is of strict right; and whilst letters of credit, or of guaranty, are of commercial origin and

of consequence have drawn to their construction and import of the principles of commercial law; they stand as to this matter on a broader ground than negotiable paper. Generally, if the debtor was insolvent when the debt became due, and has ever since so continued, no notice to the guarantor is necessary—not even a demand of payment of the debtor when the debt became due. Warrington v. Furbor, 8 East R., 242; Van Wirt v. Wilkins, 3 Barn. & Cress., 439-447.

We will refer now to the testimony, and see what evidence went to the jury, as to notice of acceptance and notice of default. Robert Coody deposed, that H. C. Coody applied to Kellogg & Sandusky to furnish him with supplies; they refused, unless the defendant, Montgomery, would guarantee payment. Mr. Kellogg, of the firm, wrote the letter of guaranty, which they required Montgomery to sign before they would open the account. The paper was handed to Judge Montgomery, who signed it. It was then taken to Kellogg & Sandusky. About the time of opening the account, and after Montgomery had knowledge of the credit, he asked witness if goods were got on the faith of this paper; witness answered affirmatively. At Montgomery's house, about the time they were fairly picking cotton, and before disposing of any cotton, Montgomery said he was in receipt of a letter, stating that Coody's account was due and unpaid, and asking what arrangement was made for payment. Montgomery had notice within ten days after the account was opened.

H. C. Coody says that Kellogg & Sandusky agreed to supply him goods on the guaranty of Montgomery. Demand of payment of the account was made on Coody, shortly after it was due, and a letter written by the book-keeper to Montgomery, notifying him of non-payment.

The testimony on behalf of the defendant does not agree in several particulars—as to date of notice of default particularly. The testimony was quite enough to justify the jury in the conclusion that Montgomery received notice that the goods would be advanced on his guaranty. The notice, whether of acceptance or of default in payment, need not be

given in any precise form, nor in writing, but may be inferred from facts and circumstances in the evidence. Reynolds v. Douglas, 12 Peters, 496; Oaks v. Weller, 16 Vt., 70.

What is a reasonable time for the performance of an act, is by the authorities rather referred to the court as a question of law, than of fact to the jury. In the administration of justice, there are many cases where certain general propositions can be laid down, but when they come to be applied, they encounter a variety of incidents unforeseen, and not before contemplated, and in reference to which no 'general rule could beforehand be prescribed; the court must exert its best discretion and judgment in determining what the law must be deemed to be as applicable thereto. Such is the inevitable result of all things depending on human foresight.

Precedents often cannot, on account of the endless variety and complication of transactions, dissimilar often to any that have occurred in any previous case, be referred to as aiding in the formation of a judgment, on a proposition like this. Therefore, the great propriety of the suggestion of Judge Story in the case of Wilds v. Savage, 1 Story Rep., 22: That it is difficult, and perhaps dangerous, to attempt to lay down any general rule as to what is reasonable notice, leaving each case to stand on its own distinguishing and special features.

In the cases cited from 7 Peters, 113, and 10 Peters, 482, it was said the guarantor must have notice of the amount for which he is held, as well as default of the principal debtor in a reasonable time. But it is not attempted to define what would be reasonable time. In Howe v. Nichols, 22 Maine Rep., 178, the court expressed an appreciation of the intrinsic difficulty, if not impossibility of laying down any precise rule.

As respects negotiable paper, the custom of merchants and the decisions of the courts have given precision and definiteness as to what shall constitute reasonable notice to drawers and endorsers. But as we have already said the same strictness does not apply in favor of the guarantor.

Looking to the special facts in this case, we are of opinion that Montgomery had notice, within reasonable time, of the non-payment by the principal debtor. For the fundamental principle as the basis of the rules, on this subject, is, did the want of notice or delay to give it, operate injuriously to the guarantor. If so, he is to be released according to the circumstances *pro tanto* or *in toto.* 1 Story Rep., 22 ; 22 Maine, 179. Testimony was before the jury, to the effect, that whilst Coody was gathering his cotton, and before any of it was sold, Montgomery had knowledge that the account had not been paid, and that he was looked to for payment. Referring to the letter of credit, the first sentence reads thus : "Mr. H. C. Coody proposes to purchase some supplies, *payable out of the first proceeds of his crop.*" The cotton was the fund, out of which payment was to be made. It was because of Montgomery's confidence in this resource, that he incurred the liability. Having notice, before any of the cotton was sold, it was in time to enable him, if he could, to obtain indemnity, or see to the application of the cotton to the debt. It is not shown that he has lost anything, or any opportunity to save himself from loss, by not receiving earlier advice.

The letter of Montgomery, in evidence to the jury, does not claim exemption from liability, on the want of notice. But rather that the goods were furnished R. Coody, for whom he was not surety, and a claim that H. C. Coody must be first sued, as defendant was only surety. The instructions to the jury accord with these views; perhaps the third instruction granted on the prayer of the defendant, is broader than would be warranted by the authorities, and was certainly as favorable to the defendant as he could ask, but as to this, we are called upon to give no opinion.

It is complained that the court erred in refusing a prayer in these words : " If the jury believe from the evidence, that the defendant, has incurred any liability, it is as surety for H. C. Coody, the principal, and that said defendant, gave written notice to the creditors, plaintiffs in this action, to commence and prosecute legal proceedings against said

Assignment of errors.

principal debtor, and the plaintiffs refused to do so, to the next term to be held thirty days after giving notice, and to prosecute the same to effect, the defendant is discharged from liability, etc. The principle embraced in this prayer, has no application or fitness to the facts of the case, and therefore the court was right in withholding it from the jury. On the acceptance of the guaranty, and notice of non-payment by Coody, the liability of Montgomery became fixed and absolute, with an immediate right of action against him. An original liability.

The decisions of the circuit court, on the several points raised in that court, being in accord with these views, we affirm the judgment.