## W. C. LEMMERT V. GUTHRIE BROTHERS ET AL.

FILED JUNE 18, 1903. No. 12,068.

1. **Guarantor: DEFAULT OF MAKER: NOTICE.** The failure of he holder of a negotiable note to notify the guarantor of the default of the makers within a reasonable time after default, does not absolutely discharge the guarantor, but only to the extent that he is damaged by the delay.

2. **Guarantor's Contract.** The guarantor's contract is a guaranty of the maker's solvency, and unless there is a different intention expressed in the contract, he is entitled to reasonable notice of the default of the maker.

3. **Guarantors: DISCHARGE.** Guthrie Brothers signed the following guaranty upon the back of a note: "For value received, we hereby guarantee payment of the within note, and waive demand and notice of protest on same, when due." The makers failed to pay at maturity, although solvent, and demand was not made upon guarantors until eighteen months after maturity, when makers had become insolvent. *Held,* That guarantors were discharged from liability.

4. **Waived.** *Held, further,* That they did not thereby waive notice of the nonpayment of the note by the makers.

5. **Evidence.** Evidence examined, and *held* to justify a peremptory instruction for defendants.

ERROR to the district court for Nuckolls county: SAMUEL H. SORNBORGER, DISTRICT JUDGE. *Affirmed.*

*T. W. Cole, E. D. Brown* and *George W. Seevers,* for plaintiff in error.

*F. H. Stubbs* and *W. F. Buck, contra.*

KIRKPATRICK, C.

This is an action brought in the district court for Nuckolls county, by plaintiff in error, against Guthrie Brothers, a partnership, and Robert Guthrie and David Guthrie, the members of such partnership, upon the guaranty of a promissory note. The undisputed testimony shows that in the spring of 1893, A. J. Briggs, George F. Cotton, and J. G. Meek, were engaged in the brick business, and purchased from the Frey-Sheckler Company, an Ohio corporation, some brick making machinery, for something more than $6,000, and in payment therefor they executed to the Frey-Sheckler Company various promissory notes for $1,074.90 each, coming due at different dates. It is further disclosed that the above named parties, before delivering the notes, procured defendants in error to guarantee their payment. All of these notes were paid except the one maturing last, which the Frey-Sheckler Company disposed of to plaintiff in error, W. C. Lemmert, the president of the corporation, but who seems to have paid full value for the note. Shortly before the maturity thereof, the makers, Briggs and others, desiring an extension, wrote to Frey-Sheckler Company, requesting such extension; the company informing them that they had sold the note to plaintiff in error, but would take the matter of extension up with him, and an extension was accordingly subsequently arranged for; plaintiff in error stipulating that he would grant the extension, if Briggs and others would sign the note, individually, as makers, and procure the same guaranty on the note that appeared upon the old one. Accordingly, the note in suit, dated June 1, 1894, payable in sixty days, was signed by Briggs, Cotton and Meek, naming Frey-Sheckler Company, as payee. Before sending the note to the company, the makers took it to defendants in error and requested them to guarantee the note. It is disclosed that the guarantors had no knowledge that the note had been transferred by the Frey-Sheckler Company to plaintiff in error. When the machinery

was purchased in the first instance, the company took a contract, by the terms of which the title to the property was to remain in them, until the full payment of the purchase price. This was understood by defendants in error. They signed their firm name upon the renewal note under a guaranty in the words following:

"For value received, we hereby guarantee payment of the within note, and waive demand and notice of protest on same, when due.        GUTHRIE BROTHERS."

The undisputed evidence discloses that, at the time of the execution and delivery of the note, the makers were engaged in the brick manufacturing business; were the owners of a valuable plant; and were also engaged in the banking business; and all of them were solvent. No notice was given to the guarantors of the dishonor of the note, until about eighteen months after its maturity, and, at that time, the undisputed evidence discloses that the makers were, each, wholly insolvent. In the meantime, they had disposed of all of the machinery purchased of the Frey-Sheckler Company, to parties having no notice of the lien of that company thereon, the company having failed to place of record its contract reserving title in itself.

The petition filed in the case sets out a copy of the note, together with a copy of the guaranty, and charges defendants in error as guarantors and indorsers. To this petition defendants in error interposed an answer, setting up four distinct defenses as follows: (1) A denial of any consideration for the note and for the guaranty; a denial that plaintiff in error ever purchased the note for the payee therein named, or that plaintiff in error ever paid any consideration for the note; (2) laches, in not giving defendants in error notice of the nonpayment of the note; and consequent damages, which released them from liability on their guaranty; (3) the wasting and disposing of security, which released defendants of all liability on the note; (4) a diversion of the guaranty, which absolutely released defendants as guarantors.

There seems to have been practically no dispute in the evidence introduced at the trial, and at the close of the evidence, the trial court, at the request of defendants in error, instructed the jury to find a verdict for them. From a judgment rendered on such verdict, and from the ruling denying the motion for a new trial, plaintiff in error brings the cause to this court upon error.

If any one of the defenses pleaded is conclusively established by the evidence, and is in fact a complete defense, the peremptory direction was justified, and the judgment must be affirmed. In our view of the case, it will only be necessary to consider the second defense pleaded. Inasmuch as the evidence clearly establishes the solvency of the makers at the maturity of the note, and their insolvency at the time of notice to the guarantors, if the guarantors were entitled to notice, they were damaged in the amount due upon the note, by reason of the failure to give notice. Some diversity in the decisions is found to exist upon the question, whether, under an instrument like that in this case, the person signing is entitled to notice of the default of the maker. From an extended examination of the cases, we are led to the conclusion that the diversity arises because of a failure to recognize the distinction between the liability of a guarantor and that of an indorser. This distinction is stated in apt language in 2 Daniel, Negotiable Instruments (5th ed.), sec. 1754:

"The liability of a guarantor also differs materially from, and is more onerous than, that of an indorser. The indorser contracts to be liable only upon condition of due presentation of the bill or note on the exact day of maturity, and due notice to him of its dishonor. And he is absolutely discharged by failure in either particular, although he may suffer no actual damage whatever. The guarantor's contract is more rigid, and he is bound to pay the amount upon a presentment made, and notice given to him of dishonor, within a reasonable time; and in the event of a failure to make presentment and give notice

within such reasonable time, he is not absolutely discharged from all liability, but only to the extent that he may have sustained loss or injury by the delay."

That a guarantor is entitled to such notice, and that a failure to give it within a reasonable time releases him from liability to the extent that he may be damaged, seems to be sustained by the better text-writers, and by a very great weight of authority. 2 Parsons, Notes and Bills (2d ed.), pp. 137-139; Tiedeman, Commercial Paper, sec. 421; *Second Nat. Bank of Oxford v. Gaylord,* 34 Ia. 248; 1 Brandt, Suretyship and Guaranty (2d ed.), sec. 197; *Oxford Bank v. Haynes,* 8 Pick. (Mass.) 423; *Wildes v. Savage,* 1 Story (U. S. C. C.), 22.

This court, at a very early date, in *Newton Wagon Co. v. Diers,* 10 Neb. 284, speaking by a late judge, said:

"When a guarantor is not notified of a default of his principal within a reasonable time, he is released from liability to the extent that he may be damaged by the omission. And if it appear that the principal was solvent at the maturity of the obligation, but became insolvent before the demand of payment was made or notice given, except under special and peculiar circumstances, damages will be presumed."

The case cited was, where Herman Diers was acting as the agent of the wagon company in the sale of its wagons. He sold a wagon to certain persons and took their note in payment; but before delivering the note to the wagon company, he indorsed his name in blank on the back thereof. It was disclosed in that case that by the terms of his contract with the company, he agreed to guarantee notes taken, and for that reason this court seems to have determined his liability as one of guaranty. This determination of the rights and liabilities of a guarantor seems never to have been overruled in this state. It seems based upon sound reason and supported by authority, and we are not inclined, at this time, to announce a different rule.

It is contended by plaintiff in error that this court in

*Huff v. Slife,* 25 Neb. 448, has adopted a rule exactly contrary to that announced in the *Newton Wagon Company* case. In the *Huff* case, Zenus Farier executed a note to one I. L. Huff, as payee. Huff, desiring to sell the note, wrote on the back thereof,. and signed,. the following guaranty:

"I guarantee the payment of the within note.

"I. L. HUFF."

It is thus disclosed that Huff, being payee of the note, and transferring it as he did, became not only an indorser, but a guarantor of the note as well. As indorser, he was absolutely bound to pay the note, if at maturity the note was protested for nonpayment, and he was duly notified. The holder need not have sued the maker, or might have joined Huff, as indorser. In either case there could be no question of Huff's liability. By adding to his indorsement the words, "I guarantee the payment of the within note," he also made himself a guarantor, and this waived his right to notice of protest and nonpayment. As indorser, he was made liable by the terms of his contract, but protest and notice thereof would have been required to fix his liability. But as guarantor, he waived this right, so that, beyond question, he was absolutely liable, and his liability in no way depended upon proper steps being taken to collect from the maker of the note. As stated in 2 Daniels, Negotiable Instruments (5th ed.), sec. 1754:

"The same person may be guarantor, and also indorser of a note; and in such case, while failure to give him due notice of demand and nonpayment will discharge him as indorser, he will still be bound as guarantor."

*Huff v. Slife, supra,* seems to rest for authority upon *Bloom & Co. v. Warder, Mitchell & Co.,* 13 Neb. 476, and *Hungerford v. O'Brien,* 37 Minn. 306, 34 N. W. 161. In the *Bloom* case, the guaranty was as follows:

"For value received, we guarantee the payment of the within note, and hereby waive protest, demand, and notice of nonpayment."

It will thus be seen that the guarantor had waived the very defense upon which defendants in error were allowed to recover in this case. The guarantor in the last case cited, having expressly waived notice of nonpayment, of course, could not be heard to insist upon want of notice. It follows, therefore, that *Bloom v. Warder* is not an authority in the case at bar, is not in conflict with the conclusion we have reached; nor is it an authority in support of *Huff v. Slife,* because the questions involved are distinctly different. In the *Hungerford* case, also cited in *Huff v. Slife,* the payee signed a guaranty, as follows:

"For value, I hereby guarantee the payment of the within note to Cassie Hungerford or bearer."

It thus appears that he was an indorser, as well as a guarantor, and his liability being fixed by the double character of his contract, it was absolute. The case, accordingly, does not furnish an authority contrary to the rule announced herein.

It is also contended that *Gibson v. Parlin & Orindorff,* 13 Neb. 292, supports a different rule. There, the payee indorsed the note, waiving demand upon the maker, protest and notice of nonpayment, and it was held that a right of action accrued against him as soon as the note became due. As we have seen, the rule, in this case, has no application to the case at bar, where it is sought to charge a party, as guarantor only upon the note.

*Flentham v. Stewart,* 45 Neb. 640, is cited, as announcing a view contrary to *Newton Wagon Co. v. Diers, supra.* The *Flentham* case arose in the following manner: Dawes & Foss, a copartnership, doing business at Crete, Nebraska, were engaged in the farm mortgage business, and made a loan to one Stewart. It seems they were paid a commission for negotiating this loan by appellant Flentham, and in addition took a second mortgage for a commission due them upon the same land. Default having been made upon the mortgage, appellant began foreclosure, making Dawes, Foss and Charles C. White, who in the meantime had been appointed receiver for the co-

partnership, defendants.  A decree was entered upon the
first and second mortgage, an order of sale issued, and the
property sold for satisfaction of the decree; and there re-
maining a deficiency due upon the first mortgage, appel-
lant Flentham filed a motion for a deficiency judgment
against Dawes, Foss and the receiver, upon the ground
that Dawes and Foss had guaranteed the payment of the
note and coupons.  Objection seems to have been inter-
posed to this by Dawes, Foss and the receiver, and the mo-
tion was by the trial court denied.  Appellant, Flentham,
brought the cause to this court upon appeal.  Two prin-
cipal questions seem to have been litigated in this court;
the contention by Dawes and Foss that, inasmuch as a
receiver had been appointed for the copartnership, a suit
could not be maintained against them or the receiver with-
out permission of the court, with reference to which it
was held that the objection was waived by taking a decree
upon the second mortgage; the further contention that no
notice had been given to Dawes and Foss of the applica-
tion for a deficiency judgment, as to which it was held
that due notice was given, and that they had appeared and
asked time to answer; a further contention seems to have
been made, namely, that no guaranty had been made of the
note and coupons, as to which defense this court said:

"This contention is wholly without merit.  The guaranty
made by Dawes and Foss, of the payment of the mortgage
debt, was in writing, and became and was a joint and
several obligation of the members composing the copart-
nership."

While the form of the guaranty is not disclosed in the
opinion, it is disclosed by an examination of the record,
that it differed from the one in the case at bar, in that
the guarantors waived "notice," but it is readily apparent
that no defense was tendered, that Dawes and Foss had
been in any way damaged by want of notice, and, in fact,
it was disclosed in the entire record that they had notice
all the way through, and appeared in the foreclosure pro-
ceedings, taking a decree upon their second mortgage.

The case seems not in point, and not an authority in conflict with *Newton Wagon Co. v. Diers, supra.*

Again, it is contended that a recent case, *McKibbin v. Ripley,* 1 Neb. (Unof.) 648, is contrary to the doctrine announced in the *Newton Wagon Company* case. From an examination of the record, in the case cited, it is disclosed that the guaranty in controversy was in the language following:

"For value received, we guarantee the payment of the within note at maturity, and waive protest and notice of nonpayment."

It will thus be seen that in the case just cited, the guarantor waived notice of nonpayment, which defendants in error herein did not, and it follows that the case does not conflict with the *Newton Wagon Company* case, or with the view announced herein. The cases cited by plaintiff in error from other states, we do not find sufficiently in point to demand consideration.

It must be kept in mind that defendants in error are not indorsers of the note sued upon. They were strangers to the original contract. As guarantors, they had a right to fix the terms of their contract. Whether, in the absence of evidence to the contrary, had they simply signed their names on the back of the note in blank before its delivery, they would have been held as accommodation indorsers, guarantors or sureties, is not involved in this case, and need not be decided. As makers of an independent contract, they had a right to limit their liability to that of guarantors. This court has many times held the indorser on a note liable who had, in addition to his liability as such, made himself liable as guarantor, but it has been said that he was simply an indorser with an enlarged liability. *Heard v. Dubuque County Bank,* 8 Neb. 10; *Helmer v. Commercial Bank,* 28 Neb. 474; *Weitz v. Wolfe,* 28 Neb. 500.

The soundness of the rule in *Newton Wagon Co. v. Diers* has been recognized in *Lininger & Metcalf Co. v. Wheat,* 49 Neb. 567, where it is said:

"The neglect to notify the guarantor of the default of his principal does not operate to discharge the guarantor, unless such neglect is, on its face, unreasonable in view of all the circumstances of the case."

And in *Pollard v. Huff*, 44 Neb. 892, the rule is affirmed.

It is finally contended that, by the use of the words in this guaranty, "waive demand and notice of protest on same, when due," defendants in error waived all notice of nonpayment by the makers. We are unable to see merit in this contention. The guaranty seems to have been placed on the back of the note with a stamp, and under it the name of "Guthrie Bros." was written. It is very apparent from the language used that the words, "waive demand and notice of protest on same, when due," have no application, and are not intended to waive the notice of nonpayment, to which a guarantor is clearly entitled. The language used would be proper to fix the liability of an indorser, and is only a waiver of the protest, and notice of protest of the law merchant, necessary to charge an indorser as such.

Again, it is contended that the following language on the face of the note, "the drawers and indorsers severally waive presentment for payment, protest and notice of protest, and nonpayment of this note," is a sufficient waiver. As we have seen, defendants in error are neither drawers nor indorsers. The settled rule is that the contract of guaranty is a contract separate and apart from the note itself. This court has said that a guarantor and maker of a note can not be joined in one action, while a maker and indorser can be joined, thus clearly recognizing the distinctive character of the two contracts.

In the case at bar, the undisputed evidence shows that for six months after the maturity of the note the makers were solvent, and that during the succeeding twelve months, before their failure to pay was brought to the attention of the guarantors, they had become wholly insolvent. It is further disclosed by the record, that this failure to give notice seems to have been occasioned by plaintiff

in error having mislaid the note in his deposit vault, so that it was not found until about the time the notice was given and suit brought.   For. this delay, defendants in error were not responsible, and should not be prejudiced thereby.   From what has been said, it clearly appears that defendants in error were damaged, by failure to give the notice, to the full amount of the note.   It follows that the judgment of the trial court, upon the verdict directed in their favor, was right, and it is therefore recommended that the same be affirmed.

HASTINGS, C., concurs.

By the Court:  For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.