## PALMER v. SCHRAGE.

1. GUARANTY—NOTICE OF DEFAULT—AFFIRMATIVE DEFENSE—DAMAGES—BURDEN OF PROOF.

   In action on contract guaranteeing vendees' payments on land contract, defense of delay in giving defendants notice of vendees' default is affirmative defense, and therefore burden of establishing their damage, if any, is upon defendants.

2. SAME—PROMPTNESS REQUIRED IN GIVING NOTICE OF DEFAULT.

   Degree of promptness required in giving notice to guarantors of vendees' default in making payment should be determined in light of fact that contract guaranteed extended over period of years, and was payable in monthly instalments, and also that guarantors knew that vendees were in default when contract of guaranty was made, that during life of contract vendees might become insolvent, and that it is common knowledge that value of property covered by contract might fluctuate.

3. SAME—RELEASE.

   Where hazards of guaranteeing payments on land contract were obvious at time contract of guaranty was entered into, guarantors, who used guaranty as means of selling their vendors' interest in land contract, should not be released unless they show ample reason therefor.

4. SAME—NOTICE OF DEFAULT—RELEASE.

   Guarantors of payments on land contract are liable notwithstanding want of prompt notice of vendees' default, in absence of showing that they were damaged by delay in giving said notice.

   CLARK, C. J., and SHARPE and WIEST, JJ., dissenting.

Appeal from Wayne; Toms (Robert M.), J. Submitted January 21, 1932. (Docket No. 174, Calendar No. 35,842.) Decided June 6, 1932. Rehearing denied September 14, 1932.

Assumpsit by Harrison G. Palmer and another against Joseph A. Schrage and another on a contract of guaranty. Judgment for defendants. Plaintiffs appeal. Reversed, and judgment ordered for plaintiffs.

*Lawrence P. De Ferie* (*Yerkes, Goddard & McClintock* and *Frank W. Donovan,* of counsel), for plaintiffs.

*Monaghan, Crowley, Reilley & Kellogg* (*Stanley E. Beattie,* of counsel), for defendants.

SHARPE, J. (*dissenting*). On October 27, 1924, Constance G. Needham as vendor contracted to sell a lot in the city of Detroit to Harry F. Swogger and Myrtle B. Swogger, his wife, for the sum of $8,500, of which $1,000 was then paid, and the balance payable in monthly payments of $65, with interest at 6 per cent. if not in default, in which case the rate should be 7 per cent. On November 22d following, the vendor assigned her interest in this contract to Joseph A. Schrage and Elsie Schrage, his wife, the defendants herein. In part payment of the purchase price of a house and lot purchased from the plaintiffs, defendants assigned this contract to them on April 22, 1925, and at plaintiffs' insistence the following agreement was attached thereto and signed by both plaintiffs and defendants:

"Detroit, Mich.,
"April 22, 1925.
"It is hereby agreed between Joseph A. Schrage and Elsie H. Schrage, his wife, and Harrison G. Palmer and Carrie E. Palmer, his wife, that the attached land contract which has been assigned to Harrison G. Palmer and Carrie E. Palmer by Joseph

Schrage and Elsie Schrage is guaranteed as to payments on same by the purchaser in the following manner. If the purchaser on this contract shall become in default Joseph Schrage and Elsie Schrage agree to make said payments on the condition that they be allowed full power of attorney to start foreclosure proceedings should this contract become in default.''

At no time thereafter did the vendees make the monthly payments in full, as required by the terms of this contract. On September 30, 1930, the attorney for the plaintiffs wrote each of the defendants that the payments were in default in the sum of $650, and that, in addition thereto, the plaintiffs had been required to pay $519.34 in taxes and assessments on the lot, and that additional taxes were then due, and made demand for the payment thereof pursuant to the terms of the written guaranty. Payment was not made, and plaintiffs brought this action on November 3, 1930, to recover the amount then claimed to be due on the contract, $1,085.71.

The case was tried before the court without a jury. It appeared that, at the time demand for payment was made, there was more than $5,000 unpaid upon the contract and for taxes paid by the plaintiffs. There was proof that, while the lot was worth the amount due on the contract at the time of its assignment to plaintiffs, its fair value at the time the notice was given and demand made was from $3,000 to $3,500. It also appears that before the trial in the circuit court Mr. and Mrs. Swogger "went through bankruptcy.''

The questions presented are whether, under the written guaranty, any duty was imposed upon the plaintiffs to give notice to the defendants of the default of the vendees in meeting their monthly pay-

ments, and, if so, the effect of their neglect to give such notice. It appears that none was given prior to the letters of September 30, 1930. Decision rests upon the nature of the obligation created by the agreement, whether that of surety or guarantor. There has been much confusion in the use of these terms by this and other courts. The distinction, based, as we think, upon principle as well as authority, would seem to be that one who signs an obligation at the request of the payor, either with or without consideration moving to himself therefor, becomes a surety, while one who enters into a contract with a payee, guaranteeing the payment to him of an obligation of a payor, thereby becomes a guarantor. In the case of a surety, the contract is delivered to the payee with his undertaking indorsed thereon or made an integral part thereof. In the case of a guarantor, the contract is entered into between him and the payee. The payor is not a party to it. It is usually, and was here, founded upon a separate consideration from that supporting the promise of the payor. While this distinction has not always been observed by the authorities, and the terms have often been used interchangeably, it was clearly pointed out by Mr. Justice STEERE in *Re Kelley's Estate,* 173 Mich. 492, 498 (Ann. Cas. 1914 D, 848), as follows:

"While a surety and guarantor are not the same in all respects, they are similar in the particular that each promises to answer for the debt or default of another, the surety assuming liability as a regular party to the primary undertaking, while the guarantor does not, but his liability depends upon an independent, collateral agreement by which he undertakes to pay the obligation if the primary payor fails to do so."

On the duty to give notice of default, he also said (page 502):

"It is true that prompt notice of default in payment is not necessary to charge a guarantor, as in case of an indorser; but it is advisable to give such notice inasmuch as it frequently becomes important to prove notice to meet the presumption of laches arising from long delay. 1 Edwards on Bills, p. 241. Delay may, and often does, amount to laches and bar recovery regardless of the statute of limitations. While the guarantor of payment, not a party to the original note, cannot complain of laches, or want of notice, unless it has worked to his prejudice, on the other hand want of due diligence by the payee, which operates to the injury of the guarantor and occasions him loss which he could otherwise have avoided, operates as a release.

"While this rule is enforced on less provocation in cases of a guaranty of collection than a guaranty of payment, it is equally applicable to the latter. It has been held that the guarantor is released if the payee fails to make demand, give notice of default, or to take any proceedings to collect for a period of five years. *Shepard* v. *Phears,* 35 Tex. 763."

In *Young* v. *Merle & Heaney Manfg. Co.,* 184 Ind. 403 (110 N. E. 669), the court quoted with approval the following from the decision in *Furst & Bradley Manfg. Co.* v. *Black,* 111 Ind. 308, 313 (12 N. E. 504):

"Where the form of the contract is that of an original and absolute undertaking to pay the debt of another, the liability of the promisor is that of a surety; but where the agreement is that another shall pay in the first instance, and the promisor becomes liable only for the default of the other, the contract is one of strict guaranty."

The court found that the contract in question was one of guaranty, and then said:

"It is well settled that the guarantor was entitled to timely notice of the default of the principal, to the end that she might have taken steps to indemnify herself from the loss which resulted from the want of such notice."

The following from Brandt on Suretyship & Guaranty (3d Ed.), § 2, has frequently been quoted or referred to with approval:

"Difference between surety and guarantor.—The words surety and guarantor are often used indiscriminately as synonymous terms; but while a surety and a guarantor have this in common, that they are both bound for another person, yet there are points of difference between them which should be carefully noted. A surety is usually bound with his principal by the same instrument, executed at the same time and on the same consideration. He is an original promisor and debtor from the beginning, and is held ordinarily to know every default of his principal. Usually the surety will not be discharged, either by the mere indulgence of the creditor to the principal, or by want of notice of the default of the principal, no matter how much he may be injured thereby. On the other hand, the contract of the guarantor is his own separate undertaking, in which the principal does not join. It is usually entered into before or after that of the principal, and is often founded on a separate consideration from that supporting the contract of the principal. The original contract of the principal is not the guarantor's contract, and the guarantor is not bound to take notice of its non-performance. The guarantor is often discharged by the mere indulgence of the creditor to the principal, and is usually not liable unless notified of the default of the principal."

Quite similar language will be found in Black's Law Dictionary (2d Ed., p. 550), under the heading "Guaranty."

While decision as to the effect of neglect to give such notice might well rest upon the holding in *Re Kelley's Estate, supra,* it is amply supported by authority. In *Taussig* v. *Reid,* 145 Ill. 488 (30 N. E. 1032, 32 N. E. 918, 36 Am. St. Rep. 504), the court said:

"We think that the decided weight of authority establishes the rule, that in case of a collateral continuing guaranty, like the one in question, reasonable notice of the default of payment on the part of the principal debtor should be given to the guarantor. And the guarantor will be discharged from payment, so far as he has sustained loss or damage, resulting from a failure of the creditor to give him such notice."

In *Cahuzac & Co.* v. *Samini,* 29 Ala. 288, an action on a contract of guaranty of payments for confectioner's supplies, it was said:

"Creditors are required to give to the guarantor reasonable notice of the default of the debtor."

See, also, *Globe Bank* v. *Small,* 25 Me. 366; *Montgomery* v. *Kellogg & Sandusky,* 43 Miss. 486 (5 Am. Rep. 508); *Lemmert* v. *Guthrie Brothers,* 69 Neb. 499 (95 N. W. 1046, 62 L. R. A. 954, 111 Am. St. Rep. 561); *Reynolds* v. *Edney,* 53 N. C. 406; *Kannon* v. *Neely,* 29 Tenn. 288; *Cobb* v. *Vaughan & Co.,* 141 Va. 100 (126 S. E. 77, 43 A. L. R. 177).

Counsel for plaintiffs strenuously insist that the holding in *Re Kelley's Estate, supra,* was *dictum,* and should not be followed; that the rule laid down in *Roberts* v. *Hawkins,* 70 Mich. 566, states the law as it should be applied in this case. In our opinion,

the language used in the *Roberts Case,* in defining
"guarantor" and "surety," was unfortunate, and
not in line with the rule which should be adopted
therefor. The holding that the written guaranty of
payment, which was indorsed on the note before de-
livery to the payee, was enforceable notwithstand-
ing a lack of notice of default, is not in conflict with
the conclusion here reached, which applies only to a
guaranty by separate instrument, not made for the
benefit of the payee, but made for the benefit of the
guarantor and for a consideration moving to him for
the obligation assumed.

It follows from what has been said that the defend-
ants were guarantors for the payments due upon the
land contract; that, within a reasonable time after
default in payment by the vendees, the plaintiffs
should have given them notice thereof; that their
neglect to do so has entailed loss upon the part of the
defendants of more than the amount of the claim
against them here made by plaintiffs, and that by
reason thereof the trial court committed no error
in entering a judgment for defendants, which should
be affirmed, with costs to appellees.

CLARK, C. J., and WIEST, J., concurred with
SHARPE, J.

NORTH, J. While I am largely in accord with the
general principles considered in the opinion of Mr.
Justice SHARPE, I am unable to agree with his appli-
cation of such principles to the facts in this case.

Defendants and appellees held the vendors' inter-
est in a land contract dated October 27, 1924. On
April 22, 1925, they assigned their interest to plain-
tiffs, and incident thereto signed the guaranty of
payment quoted in my Brother's opinion. At that
time the vendees were in default on the contract,

which by its terms extended over a period of eight years. The vendees continued to be more or less in arrears until September 30, 1930, at which time plaintiffs gave defendants written notice of a demand of payment under the guaranty. The vendees were then in default by reason of nonpayment of substantially nine $65 monthly payments ($576) which had accrued from January, 1930, to September, 1930. They were also in default for nonpayment of taxes and assessments, one item of which was paid by plaintiffs in 1928, two items in 1929, and the remaining items in 1930. Under the terms of the contract the taxes and assessments so paid by plaintiffs became "a further lien upon the land payable by the purchaser to the seller forthwith." In plaintiffs' suit against defendants as guarantors to recover the unpaid contract instalments, taxes, and assessments, they urge as a defense release from their guaranty by reason of plaintiffs' failure to give defendants notice more promptly of the principal debtors' default. The defense was sustained by the circuit judge, who tried the case without a jury.

This defense is based upon testimony of substantial depreciation in value of the contract property during the years 1928 and 1929; and that in consequence thereof defendants have sustained a damage which they claim entitles them to full release from the terms of their guaranty. This guaranty is absolute in its terms, with the exception that it is subject to "the condition that they (defendants) be allowed full power of attorney to start foreclosure proceedings should this contract become in default." This guaranty of payment was the inducement used by the defendants to consummate the sale of their vendors' interest in the guaranteed contract to plaintiffs. It is a contract between the parties couched

in plain, simple language. Defendants should not be lightly released therefrom. At most, they would be entitled only to be released from their obligation to the extent that they establish damage resulting to them from plaintiffs' failure to give a more prompt notice of the vendees' default. This is an affirmative defense, and the burden of establishing their damage, if any, is upon defendants. *Farmers & Mechanics Bank* v. *Kercheval,* 2 Mich. 504. It seems to me they have failed to offer proof from which it can be determined to what extent, if at all, they were damaged by depreciation in the value of this property subsequent to the occurrence of the defaults of which they claim they should have had notice.

It may be conceded, as stated in Mr. Justice SHARPE's opinion, that defendants were guarantors, that within a reasonable time after default defendants were entitled to notice thereof, and if such notice was not given, and defendants in consequence thereof were damaged, they would be released *pro tanto* from their guaranty. But the degree of promptness required at the hands of plaintiffs in giving notice of default should be determined in the light of the fact that the contract guaranteed by defendants was one which extended over a period of years and was payable in fixed monthly instalments. Also that, as noted above, the guarantors knew the vendees were in default when they transferred the contract, that during the life of the contract the vendees might become insolvent, and as a matter of common knowledge that the value of the property covered by the contract would fluctuate. The hazard was obvious, because, on the date defendants signed the guaranty, the unpaid balance on the contract price ($7,417.08) was substantially equal to the full market value of the property. With

these elements of uncertainty involved in the transaction, the defendants used their guaranty as a means of selling their contract to plaintiffs, and unless they show ample reason for being released as guarantors, they should be required to meet their obligation.

"A failure to give notice of the principal's default or negligence in giving such notice, in a case where the guarantor is entitled to notice, does not of itself discharge him from liability and bar a recovery upon the guaranty; but there must be not only a want of notice within a reasonable time, but also some actual loss or damage thereby caused to the guarantor, and if such loss or damage does not go to the whole amount of the claim, but is only in part, the guarantor is discharged only *pro tanto*." 28 C. J. p. 986; citing many cases, including *Roberts* v. *Hawkins, supra; Farmers & Mechanics Bank* v. *Kercheval, supra.*

See, also, note to *Pearsell Manfg. Co.* v. *Jeffreys,* 183 Mo. 386 (81 S. W. 901), in 105 Am. St. Rep. 496.

"Where the creditor does not bind himself to any delay, mere laches in the enforcement of the obligation or indulgence given to the debtor, does not release the guarantor. That the indulgence given to the principal debtor may work to the disadvantage of the guarantor does not generally affect the question." 12 R. C. L. p. 1085.

"Mere passiveness on the part of the holder will not release the guarantor, even if the maker of the note was solvent at its maturity, and thereafter became insolvent." *Roberts* v. *Hawkins, supra,* 573, citing many cases.

See, also, recent case of *Granger* v. *Graef,* 203 Iowa, 382 (212 N. W. 730).

I fail to find in this record any showing that defendants were prejudiced by not having been more

promptly notified of the vendees' default in not making the January, 1930, payment or those that subsequently accrued. All previous defaults in contract instalments had been cured by payments, and do not affect the case now before the court. The record conclusively shows that the maximum depreciation in the valuation of this property had occurred before any of the contract payments now in default became due. Therefore defendants sustained no damage by reason of the fact that plaintiffs did not give them an earlier notice, even if we assume that the notice given was not within a reasonable time after the default. The fact that the vendees became bankrupts subsequent to the giving of the notice and subsequent to the starting of this suit is of no consequence. There is no showing in the record that the vendees were collectible at any time subsequent to the defaults for which plaintiffs seek recovery, and therefore there is no proof of such a change of condition as worked an injury or damage to these guarantor defendants. For the reasons above noted, the case at bar is readily distinguishable from *In re Kelley's Estate,* 173 Mich. 492 (Ann. Cas. 1914 D, 848).

. I think the same conclusion must be reached as to the items of taxes for which plaintiffs seek recovery. The record shows that the market depreciation in the value of the real estate covered by the contract occurred in July or August of 1928; and defendants' expert witnesses testified that by 1929 there was no market for real estate of this class. Only one of the tax items ($50.38) for which plaintiffs seek to be reimbursed was paid by them in 1928, June 3d. Two items were paid in 1929 and the balance in 1930. Under the circumstances it cannot be said that defendants have established the fact even as to these items that they were damaged by reason of plaintiffs not

having given an earlier notice of the vendees' default. This is true, for the reason that the record does not show that defendants would have had any better opportunity to save themselves from loss at any time after the first of these defaults than they had at the time notice was given to them.

There is no merit to other grounds of defense urged by these guarantors. The judgment entered in the circuit court is set aside, and the case remanded, with direction to enter judgment in favor of plaintiffs for the amount of the defaults for which these guarantors are liable, $1,801.85. Costs to appellants.

McDONALD, POTTER, FEAD, and BUTZEL, JJ., concurred with NORTH, J.