[No. 23055. Department Two. September 1, 1931.]

SHERMAN, CLAY & COMPANY, *Respondent*, v. GEORGE TURNER *et al., Appellants.*[1]

[1]Reported in 2 P. (2d) 688.

258

*Frank H. Graves* and *Richard W. Nuzum,* for appellants.

*Kimball & Blake,* for respondent.

BEELER, J.—On September 10, 1926, the respondent and the defendant Washington & Idaho Theatres, Inc., entered into a written conditional sale contract whereby the former agreed to sell and the latter agreed to purchase a pipe organ for the sum of $4,892, to be paid in monthly installments. The defendant Will Starkey and the appellant George Turner guaranteed the payments specified in the contract. The Theatres Company failed to meet the installments as they fell due, and the plaintiff brought this action against the Theatres Company as the principal debtor on the contract, and against Starkey and Turner and wife as guarantors thereof. The Theatres Company and Starkey defaulted. Turner and wife appeared and defended the action. The trial was to the court without a jury, and resulted in findings in favor of the respondent and against the appellants, holding them liable on the written guaranty. From the judgment which followed, the appellants have appealed.

The facts are: The appellants for many years have owned a certain parcel of real estate in the city of Spokane on which a theatre is located. In 1918, they leased the theatre to one Oppenheimer, who soon thereafter, by conditional bill of sale, agreed to purchase an organ from the plaintiff for $12,000, payable in installments. Oppenheimer's venture failed in 1925, at which time there was an unpaid balance due on the organ of

$4,892. He made no further payments on the organ and, under the terms of the conditional sale contract, it reverted to the plaintiff. The plaintiff, however, did not physically repossess the organ, but permitted it to remain in the theatre.

The theatre stood vacant from the time Oppenheimer failed in business until September 10 or 11, 1926. On that day, the appellant Turner associated himself with Starkey, an experienced theatre operator who owned and operated a theatre in Spokane and several theatres in Idaho, in the organization of the Washington & Idaho Theatres, Inc., a domestic corporation, for the purpose of presenting moving pictures at his theatre. The Theatres Company took a lease on the theatre from the appellants for a period of five years. It also entered into a conditional sale contract with the respondent to purchase the organ, the title to which had theretofore reverted to the respondent, and agreed to pay therefor the sum of $4,892 in installments as follows: $200 on the 15th day of October, 1926, and a like sum on the 15th day of each month for the next succeeding six months, and then $250 per month for the next succeeding six months, and then $300 per month until the full purchase price should be paid. At the foot of this conditional sale contract, at the time it was executed by the purchaser, Turner and Starkey signed the following written guaranty:

"PAYMENT GUARANTEED.  GEORGE TURNER,
WILL STARKEY."

The Theatres Company operated the theatre from October 15, 1926, to July 15, 1927, but during that period it failed to meet the monthly payments except for the months of October, November and December, 1926, together with an interest item on April of that year; so that, on July 15, 1927, the Theatres Company was

indebted to the respondent for delinquent monthly installments in the sum of $1,550.

Parenthetically, it should be said that Turner and Starkey were the sole incorporators of the Theatres Company and were its original directors, and Turner acted as one of its directors continuously thereafter. Starkey was its president and treasurer. The corporation's authorized capital was $5,000. Turner and Starkey each subscribed for one-half of the stock, but made no payments on their stock subscriptions. No money was ever paid into the treasury of the company. Shortly after the Theatres Company took the lease on the theatre, the theatre was reconditioned by installing new carpets, scenery, and a moving picture machine, at a cost of from $5,000 to $8,500. These items were paid by Turner and Starkey individually.

On July 15, 1927, the officers of the Theatres Company, Starkey and Turner, concluded to make different arrangements, and the Theatres Company surrendered its lease. Turner and Starkey had certain negotiations which finally culminated in an agreement between them on August 15, 1927, whereby Turner gave Starkey a lease on the theatre for five years, at which time it was understood that Starkey would pay the amount then due and owing by the Theatres Company on the organ, together with the future monthly payments as they became due. Starkey, however, failed to make any of these payments. The respondent had no knowledge of, and was not a party to, this secret understanding or agreement between Starkey and Turner. At the time Starkey entered into the lease with Turner, he was solvent, but later met with financial reverses, and in 1929 discontinued the theatre. No notice had been given to Turner of the default of the principal debtor on January 15, 1927, nor any of the

subsequent defaults until May 6, 1929, when the respondent demanded of the appellants that they pay all of the installments then due on the contract.

The question first to be determined is whether the guaranty agreement executed by Turner and Starkey is absolute or conditional. The appellants earnestly contend that it is a conditional guaranty, and that they are not bound or liable thereon because the respondent neglected to give them notice of the default of the principal debtor which occurred on January 15, 1927, and further failed to give them notice of any of the subsequent defaults.

No particular form of words or expression is necessary to constitute a guaranty. Whether the guaranty here under consideration is absolute or conditional, must be determined by the guaranty agreement read in connection with the conditional sale contract. No different rule is to be invoked in construing a guaranty than in construing any other agreement or contract. The supreme court of the United States in *Douglas v. Reynolds*, 7 Pet. 111, had before it the question whether the guaranty there under consideration was limited or continuous, and in applying the rule of construction first mentioned, said:

"Every instrument of this sort ought to receive a fair and reasonable interpretation, according to the true import of its terms. It being an engagement for the debt of another, there is certainly no reason for giving it an expanded signification or liberal construction, beyond the fair import of the terms."

In the case of *Shore v. Lawrence*, 80 W. Va. 493, 92 S. E. 729, the guarantor agreed

". . . that in case of failure of the party of the second part to pay the rental in accordance with the terms of this agreement that he, . . . will pay the same."

In determining whether the guaranty was absolute or conditional, the court said:

"The solution of the question involved here requires a construction of the defendant's contract of guaranty. It will be observed that the obligation of this contract on the part of the defendant was to pay the rental provided to be paid by the contract in case the party of the second part failed to pay the same. There is no other condition annexed to the contract. The amount of the rental and the time at which it was to be paid are fixed by the contract. There is nothing indefinite or uncertain, either as to the extent of the obligation, or the time at which the same is to be performed. The only condition which the defendant Lawrence wrote into his contract which should be fulfilled before he would be required to pay the amount of rent provided to be paid, was that the Clark Liquor Company should fail to pay in accordance with its promises. It was shown that it has done this. It has been very uniformly held, and the holdings seem to have the support of common sense, that where one absolutely guarantees the payment of money to another, the amount of which payment is certain and definite, and the time of payment likewise determined, his contract of guaranty is absolute, but where it depends on some contingency, or where the amount is uncertain, or where the time of payment is to be determined by the happening of some future event, or where there is some other element of uncertainty or indefiniteness, the contract of guaranty is ordinarily held to be conditional."

See, also, Brandt on Suretyship & Guaranty, § 116; 12 R. C. L. 1089; 20 Cyc. 1450.

The terms of the conditional sale contract in the present case are indeed very brief and plain. The contract sets forth clearly and distinctly when the payments shall become due and the amounts thereof. Neither does the contract of guaranty contain any conditions or elements of uncertainty. It is endorsed on the conditional sale contract and is extremely succinct. It guarantees the payment of a debt fixed and

certain as to time and amount. The guaranty agreement contains no provision for notice to the guarantors in the event of the principal debtor's default. We are satisfied that the guaranty is absolute and not conditional.

"An absolute guaranty is one by which the guarantor unconditionally promises payment or performance of the principal contract on default of the principal debtor or obligor, the most usual form of an absolute guaranty being that of payment. . . . A guaranty is deemed to be absolute unless its terms import some condition precedent to the liability of the guarantor." 28 C. J. 895.

Randolph on Commercial Paper, § 850, p. 519, states the rule thus:

"A guaranty may be *absolute,* that is, for the payment of the bill or note; or *conditional,* that is, a guaranty that is collectible by due diligence. One who *guarantees payment* becomes absolutely liable on any default of payment by his principal."

See, also, Daniel on Negotiable Instruments, § 1769.

Where the guaranty is absolute, as here, no duty rests upon the creditor to notify the guarantor of the principal debtor's default. There will doubtless be found loose expressions in cases dealing with the subject of guaranty which seem to countenance the proposition that the guarantor is entitled in all cases to notice of the principal debtor's default; but no well considered case can be found applying such a rule where the thing guaranteed was a debt, definite in amount and certain as to time of payment.

"In case of an absolute guaranty it is a well settled general rule that notice of the principal's default need not be given to the guarantor in order to hold him to his liability under the guaranty; and this rule applies to an absolute guaranty of performance, as well as to an absolute guaranty of payment, which is the usual form of an absolute guaranty." 28 C. J. 982-3.

It is well settled that, where the guaranty is absolute in terms, and provides for the payment of a specific sum or sums at fixed periods, liability of the guarantor becomes fixed on default of the principal; and the guarantor must inquire of his principal, or omit to do so at his peril, unless notice be stipulated for in the contract of guaranty. Thus it was held by the supreme court of Massachusetts in the case of *Welch v. Walsh,* 177 Mass. 555, 59 N. E. 440, 52 L. R. A. 782, 83 Am. St. 302, that, where one guaranteed the payment of rent, the fact that the landlord did not make demand upon the guarantor for more than twenty-three months and the guarantor suffered from not knowing that the rent had not been paid, was no defense in an action on the guaranty. That court, after a full discussion of the authorities, concluded its opinion as follows:

"We are of the opinion that when the obligation of the guarantor is to pay a definite sum at a definite time, it is his duty to see that the sum guaranteed is paid, and that there is no duty on the creditor to give notice to the guarantor of a default in payment by the principal debtor; and that if the guarantor, in violation of his duty, has slumbered because he supposed that in the absence of a demand by the creditor the act guaranteed had been performed by the principal debtor and has suffered damage from so doing, he has nothing of which he can complain but his own negligence, and is liable to pay the sum which he guaranteed should be paid."

So in the present case, the respondent owed the appellants no duty to give them notice of any default, no duty not to be indulgent with the principal debtor, no duty to protect the appellants against possible loss from delay in pressing for payment. But, on the other hand, the duty rested upon the appellants to see that

the principal met its obligations, and to know whether it was doing so or not, and, if not, then to make the payments themselves. The delay and laches that occurred in the case, if any, are chargeable to the appellants, not to the respondent.

But there are additional reasons why notice of default was unnecessary. The trial court found that the principal debtor, the Theatres Company, was insolvent on January 15, 1927, at the time of the first default, and remained insolvent continuously thereafter. This finding is amply supported by the evidence. Furthermore, the appellants knew that the principal debtor defaulted in the payment which matured on January 15, 1927. From January 15 to July 15, 1927, the cost of operation was paid largely by Turner and Starkey individually. Turner testified: "From January to July we paid every bill ourselves out of our own pockets." On July 15, 1927, the Theatres Company was in default in the deferred payments in the sum of $1,550. From an examination of the record, we are satisfied that the appellants were acquainted with the defaults which occurred during these six or seven months. Under these circumstances, the giving of notice to the appellants would have been an idle gesture—a useless thing.

"The reason for requiring notice of default in the case of a future credit, is that, without such notice, the guarantor will not know the extent of his liability and cannot effectively protect himself from loss. Where, therefore, no advantage can be procured from knowledge of the default of the debtor, as, for example, where he is insolvent, a failure to give notice to the guarantor is not a defense to an action on the guaranty. . . . And failure to give notice is excused where the guarantor actually acquires notice from an independent source or where it is his duty under the law to take notice." 12 R. C. L., § 46, p. 1093.

Inasmuch as Starkey and Turner on August 15, 1927, at the time the latter gave the former a lease on the theatre for a period of five years, orally agreed between themselves that the former would pay the amount then due and the amounts to become due on the organ, which understanding or agreement was not communicated to the respondent, it became the duty of Turner to see that Starkey complied with the terms thereof; and if appellants suffered any loss by reason of the creditor's forbearance, it must be charged to their own neglect and not to that of the indulgent creditor.

█ There are two minor questions which require consideration. First, the lower court overruled the appellants' demurrer to the complaint. The appellants argue that several causes of action were improperly joined in the complaint, the rule being that the principal and the guarantor can not be joined as defendants in the same action. Inasmuch, however, as the Theatres Company defaulted, and the issues tried and determined relate solely to the question of the liability of the appellants on the contract of guaranty, they were in no wise prejudiced, notwithstanding the improper joinder of the causes of action in the first instance.

█ Second, it is contended that the lower court erred in allowing interest on the principal sum from May 6, 1929. That was the date on which the respondent first demanded payment of the appellants, and therefore the ruling was proper and correct. However, the computation of the interest was slightly incorrect. The interest on the unpaid balance of the principal, $4,292, from May 6, 1929, to November 10, 1930, at eight per cent per annum, is $518.86, instead of $536.04; so that there was an overcharge of $17.18.

Therefore the judgment will be reduced from $4,976.44 to $4,959.26.

With this modification the judgment appealed from is affirmed. The respondent will recover its costs on the appeal.

TOLMAN, C. J., MILLARD, and BEALS, JJ., concur.

HOLCOMB, J. (dissenting)—While I agree with the majority that the guaranty in writing in suit is an express and unconditional guaranty, I am nevertheless convinced that this is a case peculiarly requiring the application of the principle of legal laches, which is somewhat different but analogous to equitable laches. Legal laches has been applied in cases of absolute guaranty in many cases less provocative than this, by the supreme courts of the United States and of New York, Massachusetts, Michigan, Iowa, Nebraska, and others of highest repute.

Each case depends somewhat, of course, upon the peculiar facts and circumstances involved therein.

The record shows that respondent, at the instigation of Starkey, failed to notify appellants of any of the defaults in payments under the conditional sales contract, the two first installments only having been paid, and appellants were in ignorance thereof until the demand made by respondent upon them for payment in May, 1929. A period of two years and five months had elapsed since the last payment by Starkey, the co-guarantor and the known operator of the business, of any installment upon the conditional sales contract for the organ. It then delayed another fifteen months before commencing suit against appellants. During that long time, pipe organs became obsolescent as adjuncts of moving picture theatres. During that time, also, the organ intrinsically depreciated, so that

it was not worth more than $3,500, if salable, and would cost $1,000 to remove and install elsewhere.

Appellants, under the law of this state, had the right to suppose that respondent would diligently attempt to collect the installments due for the organ. On the contrary, respondent did not do so, and, by arrangement with Starkey, withheld knowledge of the defaults from appellants. There can be no doubt that all this constituted great injury to appellants, and that, by reason thereof, they should be discharged from the guaranty to the extent of the damage sustained by reason of such laches on the part of respondent. *Barhydt v. Ellis,* 45 N. Y. 107; *Sabin & Moon v. Harris,* 12 Iowa 87; *The Second National Bank of Rockford v. Gaylord,* 34 Iowa 246; *Davis v. Wells,* 104 U. S. 159; *Bedford v. Kelley,* 173 Mich. 492, 139 N. W. 250, Ann. Cas. 1914D 848; *Lemmert v. Guthrie Bros.,* 69 Neb. 499, 95 N. W. 1046, 62 L. R. A. 954, 111 Am. St. 561.

In the *Barhydt* case, *supra,* the guaranty was as follows:

". . . would pay the plaintiff's testator the rent in arrear, *without requiring any notice of non-payment, or proof of demand being made."* (Italics supplied.)

If, as the court there held, the guarantor was released by the laches of the creditor, much more so should he be in the case at bar. The above cited cases were generally absolute guaranties of promissory notes and other express contracts; and in each of them the guarantor was held released by the negligence and laches of the creditor, at least to the extent of the loss sustained by the guarantor, which should be the judgment here.

For these reasons, I am unable to agree with the majority opinion, and I am compelled to dissent.