[No. 31284.   Department One.   August 10, 1950.]

TUBE-ART DISPLAY, INC., *Appellant,* v. MARTIN BERG *et al.,*
*Respondents.*[1]

[1]Reported in 221 P. (2d) 510.

*Skeel, McKelvy, Henke, Evenson & Uhlmann* and *John C. Patterson,* for appellant.

*Little, Burgunder & Smith* and *Malcolm J. Bell,* for respondents.

DONWORTH, J.—This action was brought to recover the balance alleged to be due for rental of an electric sign pursuant to a written agreement.

The trial court rendered an oral decision, in which it construed the agreement in accordance with the defendants' contentions, and, after making its findings of fact, entered judgment dismissing the action. Upon denial of plaintiff's motion for judgment notwithstanding the decision of the court or for a new trial, it appealed to this court from the judgment of dismissal.

Appellant is a Washington corporation engaged in the business of constructing, leasing, and servicing electric display signs. At the time the written agreement involved in this case was executed by the parties (May 28, 1946), respondents were partners in the operation of a tavern in Seattle, doing business under the firm name of "Diamond Horseshoe."

The agreement provided that appellant would construct and install a certain electric display on respondents' building, and respondent agreed to pay appellant $128.78 per month for thirty-six months. By subsequent agreement, the amount of these monthly payments was increased to $136.48, effective August 1, 1946. When the original agreement was executed, the respondents paid the rental for the last three months of the term, amounting to $386.24 (later increased to $409.44).

Appellant constructed the display and installed it on July 27, 1946, and respondents paid the monthly payments until September 1, 1947, when respondents' building was completely destroyed by fire and the display was badly damaged.

Shortly after the fire, appellant's manager, at the request of respondents, met respondent Johnson at the Diamond Horseshoe. Mr. Johnson stated that he would rebuild the

building if the insurance proceeds were sufficient, and appellant's manager expressed a willingness to repair the display.

October 27, 1947, respondents' attorneys wrote appellant advising that the Diamond Horseshoe had been destroyed by fire and that the agreement was therefore terminated. The letter requested appellant to discontinue billing respondents under the agreement.

November 5, 1947, appellant wrote to respondents referring to the letter from their attorneys and stating that the balance of rent due for the term was $2,729.60. This letter stated in part:

"This sign was built especially for your purposes and as stated in the lease is of no value to us, consequently, when it was damaged by fire and the lighting destroyed, we advised you that we would repair and replace the sign and would call upon you to continue the lease. At that time you asked us to defer matters pending your insurance adjustment. We now feel you have had sufficient time to arrange your affairs and we again offer, in accordance with the provision of paragraph (i) of the contract, to rebuild the display and extend the terms of the lease for such period of time as may be necessary to make up the full term."

During this period, appellant's manager conferred with respondents at the premises at least half a dozen times. Some time after the fire, respondents built a small building on the adjoining lot to preserve their tavern license. This was also called the Diamond Horseshoe. Respondents obtained a small neon tavern sign for the new location from another sign company.

More than a year after the fire, appellant's attorneys on October 15, 1948, wrote a letter to respondents stating that fourteen monthly payments were delinquent, and that appellant, pursuant to paragraph (g) of the agreement, had elected to declare the balance of the monthly payments due and payable with interest. The letter stated the position of appellant as follows:

"In response to your attorneys' letter of October 24, 1947, we informed you by letter on November 4, 1947, that Tube-Art Displays elected to repair the damaged sign and hold

you as partners in accordance with the terms of the contract.

"Tube-Art Displays has constantly attempted to have you state when repairs could be commenced. You have delayed repeatedly for various reasons so that many months have elapsed since the fire and our client has never been permitted to make the repairs."

No reply was received by appellant to this letter, and this action was commenced a few weeks later. At the time of the trial in July, 1949, another building was being constructed by respondents on the site of the original Diamond Horseshoe but it was not contemplated that it would be used for tavern or restaurant purposes.

Appellant's complaint alleged the making of the agreement by the parties and respondents' subsequent breach thereof and prayed for judgment in the amount of $2,728.34, plus seven per cent interest and $500 attorneys' fees.

Respondents' answer denied the material allegations of the complaint and set up three affirmative defenses: (1) that the execution of the agreement was procured by fraud, (2) that under paragraph (e) of the agreement respondents were entitled to a credit of $3,830.40, and (3) that appellant terminated the agreement upon being notified of the destruction of respondents' building by fire. Appellant's reply denied this affirmative matter.

Appellant argues three assignments of error, but we find it necessary to consider only the question whether the trial court correctly construed the agreement.

This agreement consists of a printed form (prepared by appellant) with blank spaces which have been filled in by typewriter. Its provisions are too long to be quoted in full, but the more important ones will be discussed in some detail in our consideration of the arguments of the parties.

In construing this agreement, we must consider the situation of the parties at the time of its execution (*Vance v. Ingram,* 16 Wn. (2d) 399, 133 P. (2d) 938) and also examine the whole of it in order to determine the meaning of any particular parts as well as the meaning of the whole agreement. *Johnston v. Maryland Cas. Co.,* 22 Wn. (2d) 305, 155 P. (2d) 806.

Basically, appellant (designated in the agreement as the Owner of the display) agreed to construct it and install it on respondents' building. Appellant further agreed to supply parts, repairs, and maintenance for a period of thirty-six months. Respondents (designated as the User of the display) obligated themselves to pay appellant on the first day of each month during this term $136.48. Time was stated to be of the essence of the agreement.

The parties contracted with reference to the possibility of damage to, or destruction of, the display but not with reference to the possible destruction of respondents' building. Paragraph (i) of the agreement provided:

"DAMAGE TO DISPLAY  In the event of damage to or destruction of display by any cause, the Owner shall have the right to either rebuild the display extending the term of this lease for such period of time as may be necessary to make up the full term thereof, or of terminating this agreement in which event the User shall not be obligated to pay further rent for the display, provided, however, User shall be responsible for injury or damage to or destruction of said display caused by or resulting from any act or negligence of User, his agents or employees."

The trial court in its oral decision stated that this paragraph was the most important part of the agreement to be considered in deciding the case. The court further stated that respondents were under no obligation to appellant to rebuild their building, and concluded:

"The document gave to the plaintiff, who prepared it, the right to elect as to whether or not it would go to the expense of rebuilding the sign, or whether or not it would terminate the agreement, in the event of its destruction.

"I think it would be only justice and equity that the defendants should have the right to make the same decision with reference to their building."

While respondents were not obligated to rebuild their building so that appellant might repair and reinstall the display on it, respondents had made an absolute promise to pay appellant $136.48 per month for the term of thirty-six months. This they failed to do, and appellant, in accordance with paragraph (g), elected to declare the balance of the

monthly payments forthwith due and payable. Due notice of this election to accelerate these payments was given respondents, but they refused to pay the amount then due under the terms of the agreement.

We cannot agree with the trial court in holding that respondents had an election to rebuild or not rebuild their building after the fire and that, if they elected not to do so, their liability under the agreement terminated.

There being no ambiguity in the agreement and nothing in it contrary to public policy, courts must enforce it as written. To affirm the holding of the trial court would, it seems to us, be to make a new contract for the parties by supplying a provision which the parties omitted.

Respondents contend that the agreement was unconscionable and quote from *Krutz v. Robbins*, 12 Wash. 7, 40 Pac. 415, 50 Am. St. 871, 28 L. R. A. 676, a case involving the question whether an increase in the rate of interest because of a default constituted a penalty or liquidated damages. The quoted language has no application to this case.

Respondents further argue that the continued existence of the Diamond Horseshoe building was necessary to the performance of the agreement, and that its destruction by fire excused them from further obligation thereunder. While respondents' answer contained no affirmative defense of impossibility (*McBride v. Callahan*, 173 Wash. 609, 24 P. (2d) 105), we will briefly refer to this argument.

Many of the cases cited by respondents in support of this argument are discussed in notes found in 12 A. L. R. 1273 and 74 A. L. R. 1289. The cases referred to in respondents' brief as upholding their impossibility theory are based upon facts materially different from those in the present case, and the cited cases, as we read them, are examples of real impossibility.

In this case, the performance of the contract by respondents did not depend upon the existence of the original Diamond Horseshoe building. They could have built another building on the same location, in which they could have resumed the operation of their tavern. The inference

from the record is plain that respondents collected the proceeds of their fire insurance policy and eventually built a new building on the site of the old building for a totally different use. Under the evidence in this case, there is no basis for the defense of impossibility.

The breach of the agreement occurred when respondents advised appellant on October 27, 1947 (nearly two months after the fire), that they repudiated it. Respondents refused to make any monthly payments thereafter. If it had been the intention of the parties that, in the event of the destruction of respondents' building, their obligation to make further monthly payments should thereupon cease, the agreement should have contained a provision to that effect. There being no such provision either expressed or implied within the four corners of the agreement, the courts may not read one into it.

We have examined paragraph (e) of the agreement, which is the basis of respondents' second affirmative defense, and are of the opinion that its provisions have no application to this case.

For the reasons stated herein, we hold that appellant was entitled to accelerate the balance of the monthly payments provided for in the agreement (which were originally payable on and after September 1, 1947), and that it is now entitled to judgment against the respondents for the amount prayed for in its complaint, plus interest as provided in the agreement and for attorney's fees in such amount as the trial court shall determine to be reasonable.

Accordingly, the judgment appealed from is reversed, and the case remanded to the superior court with instructions to enter a judgment in favor of appellant in accordance with this opinion.

SIMPSON, C. J., BEALS, SCHWELLENBACH, and GRADY, JJ., concur.