[No. 37423.    Department Two.    May 20, 1965.]

EARL AMICK et al., *Respondents*, v. L. M. BAUGH et al., *Appellants*.*

*Reported in 402 P.2d 342.

*Lycette, Diamond & Sylvester* and *Herman Howe*, for appellants.

*Malcolm L. Edwards* (of *Culp, Dwyer, Guterson & Edwards*), for respondents.

DONWORTH, J.—Defendants appeal from a summary judgment of the trial court entered on October 11, 1963. No material facts are in dispute.

Affidavits of both parties agree as to the following facts:

On October 13, 1960, Thomas E. Dunstan, as maker, executed and delivered to respondent husband a promissory note for $5,000 payable to him. The note was also signed by appellant L. M. Baugh "as guarantor only." On November 8, 1960, a similar note for $10,000 was also executed and delivered by Thomas E. Dunstan, as maker, and was signed by appellant L. M. Baugh (guarantor).

On November 5, 1962, respondents, Earl Amick and wife, commenced suit against appellants, L. M. Baugh and wife, on these two promissory notes. The maker of the notes, Thomas E. Dunstan, was not made a party defendant. On November 16, 1962, appellants served upon the attorneys for respondents a Notice to Institute Action against Thomas E. Dunstan, the pertinent portion of which reads:

YOU ARE HEREBY REQUIRED forthwith to institute action against Thomas E. Dunstan upon those certain promissory notes dated October 13, 1960, and November 8, 1960, respectively, described in the complaint in the above entitled action.

Respondents did not institute a separate action or join Mr. Dunstan as defendant in this pending action.

On or about February 7, 1963, appellants answered respondents' complaint, alleging, as an affirmative defense, the service of the above demand to institute action against Thomas E. Dunstan, and respondents' failure to comply therewith.

September 16, 1963, respondents filed a motion for summary judgment against appellants. Appellants, on September 27, 1963, filed a cross-motion for summary judgment dismissing respondents' action with prejudice on the ground that they had failed to institute action against Thomas E. Dunstan, the maker of the two notes, although more than 10 months had elapsed since the written demand to institute such action had been served upon them.

The uncontroverted affidavit of respondent husband shows the following additional facts:

1. The notes were each for a sum certain, payable on a specific date fixed in each note.

2. Thomas E. Dunstan has never been released upon the notes which are the subject matter of this lawsuit.

3. No collusion exists between Thomas E. Dunstan and respondents or with any other parties with respect to the payment of the notes which are the subject matter of this action.

4. Thomas E. Dunstan is insolvent and incapable of paying the notes which are the subject matter of this action.

5. The ability of Thomas E. Dunstan to pay these notes is no less than it was at the time respondents served their notice upon appellants to institute against Thomas E. Dunstan.

The uncontroverted affidavit of Thomas E. Dunstan, maker of the notes, establishes the following facts:

The notes sued on were given in connection with a sale of real estate. Negotiations between Mr. Dunstan and respondents led to terms which included the payment of $20,000 in cash at the time of the signing of the real-estate contract. Mr. Dunstan was unable to produce this amount

in cash. Therefore, he proposed to respondents that his notes in the total amount of $20,000 be accepted in lieu of cash. Respondents refused to accept Mr. Dunstan's notes unless Mr. Dunstan procured a signature guaranteeing the notes. Mr. Dunstan obtained the signature of appellant L. M. Baugh on the two notes involved in this action and the transaction was completed.

The trial court granted summary judgment on both notes in favor of plaintiffs-respondents, based on these pleadings and affidavits.

Appellants' assignments of error raise only one issue of law, i.e. that the trial court erred when it refused to apply the provisions of RCW 19.72.100 and 19.72.101 to the facts in this case. Appellants' argument is that he is a surety and that, therefore, he is entitled to invoke these statutory enactments.

Respondents claim that the trial court's refusal to apply RCW 19.72.100 and 19.72.101 to the facts of this case was proper because of at least one of three separate reasons. These are:

1. These statutes do not apply to situations involving negotiable instruments.

2. They do not apply to appellants because they are guarantors, not sureties, as a matter of law.

3. They do not operate to discharge appellants if the principal is *no less* able to pay the notes at the time the surety claims to be discharged so that the surety was not harmed by the failure to sue.

If respondent is correct on any one of these reasons, the trial court must be affirmed.

RCW 19.72.100 and 19.72.101 read as follows:

Any person bound as surety upon any contract in writing for the payment of money or the performance of any act, when the right of action has accrued, may require by notice in writing the creditor or obligee forthwith to institute an action upon the contract.

If the creditor or obligee shall not proceed within a reasonable time to bring his action upon such contract, and prosecute the same to judgment and execution, the surety shall be discharged from all liability thereon.

These statutes have been in effect since 1854 in substantially the same form. They constitute Washington state's version of the doctrine in suretyship law commonly known as the "Pain v. Packard" rule, which takes its name from *Pain v. Packard*, 13 Johns. R. 174 (N.Y. Sup. Ct. 1816). The history of the rule has been traced in 37 Yale L.J. 971 (1927-1928). The rule is also discussed in two leading texts— Stearns, Suretyship § 6.38 (5th ed. 1951), and Simpson on Suretyship § 42, p. 173 (1950).

From those sources, it appears that the doctrine has been adopted by court decision in three states, including New York.[1] It has been specifically rejected by court decision in 16 states.[2] Eighteen states, including Washington, have adopted the rule of *Pain v. Packard* by statute.[3] These statutes vary somewhat in wording. Some statutes specifically apply to negotiable instruments and bonds, as well as contracts, and to accommodation makers, indorsers, and guarantors, as well as sureties. Because of these differences, the questions raised by respondent may be expressly resolved by statute in some of those jurisdictions.

We have examined the law in these other jurisdictions and will refer to the pertinent decisions and statutes later in this opinion, because prior Washington cases do not totally answer the problem raised in this case, although some prior Washington cases are relevant.

The parties disagree as to whether appellant husband signed as surety or absolute guarantor. Appellants argue in their brief:

> While the appellant, L. M. Baugh, signed the notes involved in this action as "guarantor" or "as guarantor only," it is obvious that the obligation assumed by him was as a surety for the payment of the notes by the maker, Thomas E. Dunstan, and not as a guarantor.

Appellants then cite and quote from 38 C.J.S. *Guaranty* § 6c; 24 Am. Jur. *Guaranty* § 11, and 38 C.J.S. *Guaranty*

---

[1] 37 Yale L.J. 973 (1927-28); Simpson on Suretyship § 42, p. 178 (1950).

[2] 37 Yale L.J. 973 (1927-28).

[3] 37 Yale L.J. 973 (1927-28); Simpson on Suretyship § 42, p. 179 (1950); Stearns, Suretyship § 6.38, p. 168 (5th ed. 1951).

§ 6b (in that order), to establish the proposition that, whether a party to a contract is a surety rather than a guarantor is not determined solely by the designation of that party in the contract as "guarantor" or by similar words. Appellants cite no Washington cases, nor do the footnotes in the texts above referred to cite any Washington cases. The cases cited in those authorities are consistent with prior Washington decisions. However, the determination of whether a party is either guarantor or surety is to be determined from the "four corners" of the contract, *i.e.* the contract is to be read and interpreted as a whole. Other evidence is admitted only if there is an ambiguity in the contract. There is no ambiguity in the notes upon which the present case was predicated, nor is fraud involved herein.

Therefore, testimony of the parties to the notes should not be considered as altering the express written obligation of one of the parties to the notes, in the absence of equitable reasons, such as fraud. See *Dove v. Cowlitz Valley Bank*, 191 Wash. 429, 71 P.2d 555 (1937); *In re Hemrich*, 187 Wash. 21, 59 P.2d 748 (1936); *Farmers State Bank of Newport v. Lamon*, 132 Wash. 369, 231 Pac. 952, 42 A.L.R. 1072 (1925).

Furthermore, we believe the facts stated in the affidavits of the parties (which is evidence not appearing within the four corners of the notes) support respondent's position that appellant is an absolute guarantor. In *Sherman Clay & Co. v. Turner*, 164 Wash. 257, 263, 2 P.2d 688 (1931), involving an ordinary contract, we held that the words "payment guaranteed" clearly showed that the intention of the party using those words was to be bound as an absolute guarantor. In that case, this court stated:

> We are satisfied that the guaranty is absolute and not conditional.
>
> "An absolute guaranty is one by which the guarantor unconditionally promises payment or performance of the principal contract on default of the principal debtor or obligor, the most usual form of an absolute guaranty being that of payment . . . . A guaranty is deemed to be absolute unless its terms import some condition precedent to the liability of the guarantor." 28 C. J. 895.

■ We think that the words used by Mr. Baugh in signing these notes are equally clear. His signature was followed by the sole words "guarantor" and "as guarantor only" on the face of each of the two notes, respectively. These words show no other condition than the default of the maker of the note. This is the standard legal effect of these words in commercial law. See Stearns, Suretyship § 4.5 (5th ed. 1951). Also, see the proposed Uniform Commercial Code § 3-416 (1), (3) (Proposed Senate Bill 122, 1965 session),[4] and the commentary on this section in the Uniform Commercial Code, Comments for the State of Washington, with reference to the official comments of the draftsmen of the Uniform Commercial Code.

Finally, we believe that respondents relied on appellant husband's choice of words "guarantor" and "as guarantor only," for it was only after the notes were "guaranteed" that they were accepted by respondents. We believe appellant is bound by these words, because they have a settled legal meaning. See Restatement, Contracts § 234 and § 235(b).

■ The distinctions between (1) an absolute guarantor (guarantor of payment), (2) a surety, and (3) a conditional guarantor (including guarantor of collection) are basic in the law of suretyship. At common law, from the early 1800's (the time the *Pain v. Packard* doctrine was developed) down to the present day, the basic *practical* distinction between the rights and duties of creditor and the surety or guarantor may be reduced to simply a question of whether the creditor must (1) make a demand on the principal debtor (maker of the notes in this case) at or after maturity date, and (2) give notice to the surety or guarantor of the default of the principal debtor, and (3) sue the principal debtor on the debt, and execute on the judgment. Each of these three steps, *if required* of the creditor in order for him to mature his rights against the surety or guarantor, gives the latter party some right to have the creditor look first to the principal debtor for the payment of the debt, even

[4]Senate Bill 122 was enacted. See Laws of 1965, Ex. Ses.; ch. 157.

though the debt is in default in the sense that it is due (or overdue) and not paid.

At common law, the absolute guarantor (in this instance, a guarantor of payment) of one specific obligation is not entitled to have any of these steps taken by the creditor. The obligation of the absolute guarantor, by his express agreement, is matured at the moment the debt is in default. See *Robey v. Walton Lbr. Co.*, 17 Wn.2d 242, 135 P.2d 95, 145 A.L.R. 924 (1943); *Sherman Clay & Co. v. Turner, supra*; Stearns, Suretyship § 4.5 (5th ed. 1951). If the contract provides for any conditions other than default of the principal debtor, then the personal security obligor is not an absolute guarantor. He is either a conditional guarantor or a surety. Stearns, op. cit. *supra*, see §§ 4.5, 4.6.

At common law, the surety normally is not entitled to have any of these three steps taken, either. See Stearns, op. cit. *supra*, § 7.16; Simpson, op. cit. *supra*, § 41, pp. 166-171. However, the surety may contract to avail himself of any variety of these three protections or other additional protections. Stearns, op cit. *supra*, § 5.6. In those jurisdictions which have the doctrine of *Pain v. Packard, supra*, either by court decision or by statute, the surety has the additional right of demanding the protection of step three after the default. See the authorities cited earlier in this opinion's discussion of the doctrine, and especially Stearns, op. cit. *supra*, and Simpson, op. cit. *supra*.

Furthermore, the surety may expressly agree to waive any of his rights. This practice is very common with regard to sureties on negotiable notes waiving defenses or notice of default. Britton, Bills and Notes § 41, pp. 96-97 (2d ed. 1961). The rights of the doctrine of *Pain v. Packard*, including the statutory enactment of that rule, may also be waived. See *Commonwealth ex rel. Dept. of Justice v. National Surety Co.*, 310 Pa. 108, 164 Atl. 788, 89 A.L.R. 564 (1932); Annotation, 89 A.L.R. 570 (1934).

At common law, the conditional guarantor is entitled to have the particular condition (specified in the contract) occur before he is liable. The most common kind of condi-

tional guarantor with regard to a money debt is a guarantor of collection. In a guaranty of collection, it is expressly agreed between the guarantor and the creditor that the guarantor's liability arises only after the creditor has obtained judgment and pursued execution to incomplete satisfaction of the judgment. It is said that the guarantor of collection is entitled to have the creditor take all three steps discussed above (i.e. (1) make a demand of the principal debtor, (2) give the guarantor of collection notice of the default of the principal, and (3) pursue the principal debtor to judgment and satisfaction). However, only the third step is usually considered material. If the creditor does not proceed on the third step in a diligent manner, the guarantor of collection is discharged. With regard to the discussion regarding guarantors of collection, see Stearns, op. cit. supra, § 4.6; Simpson, op. cit. supra, § 41, p. 172, § 42, p. 180.

It is clear, from a comparison of the rights of a surety with those of a guarantor of collection, that the effect of the doctrine of Pain v. Packard, supra, is to allow the surety to convert himself into a guarantor of collection in one respect. That one respect is that the surety is given the added protection of requiring the creditor to obtain a judgment and execution against the principal debtor, if possible, before the surety can be held liable. This is not a great step from the surety's equitable rights which preceded the doctrine of Pain v. Packard, supra. RCW 19.72.100 and 19.72.101 simply codify this procedure as a legal right of the surety. See Stearns, op. cit. supra, § 4.6; Simpson, op. cit. supra, § 41, p. 172, § 42, p. 180.

The question remains, do RCW 19.72.100 and 19.72.101 apply to a guarantor as well as to a surety?

Appellant has not cited any cases or argued in either of his briefs that RCW 19.72.100 and 19.72.101 do apply to guarantors, as well as to sureties. Indeed, appellant argued specifically that he was a surety and not a guarantor, thus stressing the difference between the two concepts. We also note that appellant has claimed that the statutes of Indiana and Missouri are like the Washington statutes involved in

this case. Cases from both of those jurisdictions, including one cited by appellant, show that the statutes in those jurisdictions do not apply to guarantors. See *Martinsburg Bank v. Bunch,* 251 S. W. 742 (Mo. App. 1923); *Koenig v. Bramlett,* 20 Mo. App. 636 (1886); *Sample v. Martin,* 46 Ind. 226 (1874).

Other jurisdictions have the same rule. New York (where the doctrine is based on court decision), Ohio, and Texas (where the doctrine is based on statutes which do not expressly include guarantors) have held that guarantors cannot avail themselves of this rule. See *Newcomb v. Hale,* 90 N.Y. 326 (1882); *Galloway v. Barnesville Loan, Inc.,* 74 Ohio App. 23, 57 N. E.2d 337 (1943); *Ganado Land Co. v. Smith,* 290 S. W. 920 (Tex. Civ. App. 1927).

We believe that a careful reading of those cases shows that in every instance (except the New York case) the kind of guaranty involved was a guaranty of payment. However, only one case (the Texas case, cited above) limited the holding to that kind of guaranty. In our opinion, the cases above referred to represent the majority rule in those jurisdictions which have not decided the question by statute. The rule of *Pain v. Packard, supra,* statutory or otherwise, does not apply to guarantor of payment. We think that this position is justified on the case authorities cited from Missouri, Indiana, New York, Ohio, and Texas.

Even in the absence of authority from other jurisdictions, we would be inclined to adopt this rule. This court has previously held that the Washington statute, now codified as RCW 19.72.100 and 19.72.101, is not applicable to general indorsers of negotiable notes. *Allen v. Chambers,* 13 Wash. 327, 43 Pac. 57 (1895). This court has also held that the statute does not apply to pledgors of property. *Carter v. Curlew Creamery Co.,* 20 Wn.2d 275, 147 P.2d 276, 151 A.L.R. 921 (1944). The holding in those cases can best be summarized by simply saying that the statute did not apply to either kind of agreement, because each was held to be different from the agreement of a surety.

The same may be said of a guarantor of payment. Earlier in this opinion we stated that the very nature of the obligation of the guarantor of payment was that it was expressly agreed by the guarantor that he would pay on default of the principal. The nature of the surety's obligation is subject to the specific contractual provisions of the agreement. We took special note of the fact that the surety could contract for conditions, and waive conditions, including the statutory right given by RCW 19.72.100 and 19.72.101.

In our opinion, a guaranty of payment is like a suretyship contract in which the provisions are expressly contrary to the right expressed in the statute, that is, that the personal security obligor has expressly agreed that the creditor need not first pursue the principal to judgment and execution. The obligation of the guarantor of payment is very similar to (although not precisely the same as) the obligation of the surety who has expressly waived the statutory right in RCW 19.72.100 and 19.72.101. It is perfectly obvious that the guarantor of payment should not be allowed to use this statute to require the creditor to do what the guarantor of payment had expressly agreed that the creditor need not do.

Therefore, on the basis of authority from other jurisdictions, which we are convinced represents the majority rule, and on the basis of our own reasoning on a ground similar to prior Washington cases, we expressly hold that RCW 19.72.100 and 101 do not apply to guarantors of payment.

There were two other reasons for affirmance of the trial court which were argued by respondent. Since we have reached the conclusion that, for the reasons already stated, the trial court should be affirmed, it is unnecessary to decide these other questions.

The trial court was correct in awarding summary judgment to respondent and its judgment is affirmed.

FINLEY, WEAVER, and OTT, JJ., and JOHNSON, J. Pro Tem., concur.