[No. 271-40522-1. Division One. May 25, 1970.]
Panel 2

BELLEVUE SQUARE MANAGERS, *Appellant*, v. BERTIL A. GRANBERG *et al., Respondents.*

*Bogle, Gates, Dobrin, Wakefield & Long* and *Dan P. Hungate,* for appellant.

*Samuel J. Steiner,* for respondents.

WILLIAMS, J.—This action was based upon a written guaranty of payment of a portion of the rentals specified in the lease of a supermarket. The cause was tried to the court without a jury, and resulted in findings of fact, conclusions of law, and judgment denying plaintiff's right to recover on the guaranty agreement except for a period of 4 months. From this judgment, it appeals.

The guaranty agreement arose out of two distinct business transactions, both of which are fully documented. The undisputed facts, as appear from these documents and as found by the trial court, are as follows:

Initially, Giant Land Company (Giant Land) was the legal owner of the leased premises. It conveyed the property to Edgewater Park, Inc. (Edgewater), which transferred title to Bellevue Square Managers, the appellant. Respondents Bertil A. Granberg and Jane Granberg, his wife, are the guarantors under the guaranty agreement.

The first arrangement was a basic lease dated December 9, 1959, between Giant Land and Arden Farms Company (Arden Farms). This lease was for 15 years at a rental of $5,175 per month. It granted Arden Farms the right to sublease the premises to Food Giant Aurora Company (Food Giant), or, if Food Giant defaulted, to a substitute sublessee, subject to Giant Land's approval. Two days after the execution of this lease, Arden Farms sublet the premises to Food Giant for a like term and rental. At that time, Arden Farms was only interested in promoting its dairy products and helping to support the financing of Giant Land, of which it owned approximately 20 per cent. The rental figure of $5,175 was the amount due each month on the mortgage on the property.

In 1960, Giant Land entered into negotiations with Seat-

tle Mortgage Company to refinance the mortgage on the premises in a larger amount. On December 12, 1960, Giant Land and Arden Farms entered into an agreement which stated in the recitals that Arden Farms had originally leased the premises from Giant Land and subleased to Food Giant as an accommodation to Giant Land, so that it would be able to obtain the necessary financing to build the supermarket. It was further recited that Seattle Mortgage Company insisted that, before it would arrange for the loan, the lease be amended to increase the monthly rental to $5,400, and to require the lessee to pay the taxes, insurance and assessments. The intention of the parties as to Arden's payment requirements was stated in the agreement in this way:

WHEREAS, in the event Food Giant Aurora Co. should default in the payment of its monthly rental as sublessee under its said sublease with Arden, it is not intended that Arden should be required to pay as rental under its basic lease with Giant more than the actual amount required to be paid by Giant to its mortgagee, and

WHEREAS, as an inducement to Arden to enter into an amendment to the aforesaid lease of December 9, 1959, and to the said sublease of December 11, 1959, which is necessary as a condition to Giant obtaining the $575,000.00 loan from Seattle Mortgage Company, Giant will agree that in the event Food Giant Aurora Co. should default in the payment of any monthly minimum rental under the amended sublease in the amount of $5,400.00, that Arden shall not be required to pay a net rental under its basic lease with Giant for any month in which Food Giant Aurora Co., as sublessee, shall default in the payment of its rental an amount greater than the sum of $4,853.00, which Giant will be required to pay each month to Seattle Mortgage Company in amoritization of the $575,000.00 loan, . . .

Now THEREFORE, . . .

. . .

2. That in the event of a default by Food Giant Aurora Co. in the payment of any minimum monthly rental of $5400.00 under its sublease of December 11, 1959, as amended, with Arden, covering the hereinabove described real property, Giant shall refund to Arden the

difference between the rental paid by Arden for any such month in which such default shall have occurred and the sum of $4853.00, with such refunds to be made to Arden for each and every month that such a default by Food Giant Aurora Co. occurs. That Arden shall have the right to offset the amount of any refund to which it would be entitled pursuant to this paragraph against the amount of rental that it would otherwise be required to pay as lessee under the aforesaid lease of December 9, 1959, as amended.

Pursuant to this agreement between Giant Land and Arden Farms, both the lease between Giant Land and Arden Farms and the sublease between Arden Farms and Food Giant were amended.

Seattle Mortgage Company then placed the increased loan to Giant Land with Penn Mutual Life Insurance Company. Because of the more favorable terms, the monthly payments were reduced to $4,853.

We now turn to the second business transaction. In 1964, Giant Land and Edgewater entered into negotiations for the exchange of the supermarket real estate for a parcel owned by Edgewater. The attorney for Edgewater was supplied with the documents evincing the first transaction. He questioned the certainty of payment of the rent over $4,853 in the event of the default of Food Giant in the payment of its rent. The attorney for Edgewater in a letter of June 17, 1964, to Metzger Realty, the agency promoting the exchange, set forth items required by Edgewater in the transaction, including an

Approval of a satisfactory guaranty on the difference between Ardens Farms guaranteed lease payment and the lease payment called for in the original lease.

Respondent Granberg, as attorney for Giant Land, wrote Edgewater's attorney on June 19, 1964, referring therein to the June 17, 1964, letter to Metzger Realty, and in his list of items, included the following:

There will be a personal guarantee by Bertil A. Granberg of the difference between Arden Farms guaranteed lease payment and the lease payment called for in the orginal lease.

On June 30, 1964, Edgewater wrote Giant Land Company in care of respondent Granberg, to the effect that the exchange of properties had been approved by its board of directors, subject to several considerations, one of which was

A guarantee in form satisfactory to the attorney for Edgewater Park, Inc., of Bertil A. Granberg and wife on the difference between the Arden Farms Co. guarantee of $4,853 per month and the rental payment of $5400 per month.

There were several other letters, not material to our inquiry. The properties were exchanged. The guaranty agreement contained the information that respondents were financially interested in both Food Giant and Giant Land and stated:

4. That subsequently Arden Farms Company and Food Giant Aurora, Inc. and Giant Land Company have entered into an agreement whereby it is provided that in the event Food Giant Aurora, Inc. shall not pay rent as provided in said lease, that the obligation of Arden Farms Company to pay rent to Giant Land Company shall be reduced to the amount of $4,853 per month, said sum being the amount of the mortgage payment required to be made by Giant Land Company to Penn Mutual Life Insurance Company under the terms of its mortgage loan from said Penn Mutual Life Insurance Company.

. . .

6. That first parties, as part of the consideration for said exchange, hereby guarantee payment to second parties of the difference between the rental called for in said lease from Arden Farms Company to Food Giant Aurora, Inc. of $5,400 per month, and the sum of $4,853 per month, the amount to which the rental called for by the lease between Arden Farms Comany and Giant Land Company may be reduced in the event that rental payments are not made by said Food Giant Aurora, Inc. to Arden Farms Company. That first parties agree to pay to the second party any difference between the said sum of $5,400 per month and $4,853 per month, which second party may not be paid under the terms of the lease as modified between said Arden Farms Company and said

Giant Land Company. Said deficiency shall be paid each month as said deficiency arises.

In 1966, Food Giant became insolvent and passed into receivership, and most of its assets were sold to Arden Farms. The sublease was either forfeited by Arden Farms or terminated by the receiver. Arden Farms then commenced operation of the supermarket, paying rental of $4,853 per month for the premises. Appellant, as successor in interest to Edgewater, brought this suit to enforce the guaranty made by respondents to pay the difference between $4,853 and $5,400 per month.

From these facts, which were not in dispute and which were essentially found by the trial court, the following conclusions were drawn:

## I.

That the sublease between Arden Farms Company and Giant Land Company [sic] was probably terminated in October of 1966 by Arden Farms Company; and in any event, said sublease was terminated in the course of the receivorship by March of 1967.

## II.

That under the Supplemental Agreement of December 12, 1960, between Giant Land Company and Arden Farms, Arden Farms is entitled to a rent reduction only in the event there is a default in rent payments due from Food Giant Aurora under the sublease with Arden Farms; that inasmuch as said sublease was terminated and the premises surrendered, since March of 1967, there has not been a lease covenant requiring Food Giant Aurora to pay rent; and inasmuch as the covenant to pay rent does not exist, it is not possible to have a default in the rent due from Food Giant Aurora.

## III.

That inasmuch as the sublease between Arden Farms and Food Giant Aurora has been terminated and the premises surrendered, and inasmuch as there cannot be a default in the payment of rent after March of 1967, the monthly rent due said date from Arden Farms to the plaintiff has not been reduced below the sum of $5,400.00.

## IV.

That inasmuch as the rent obligation from Arden Farms has not been reduced, the defendants are not liable on the guaranty beyond the month of March 1967.

The trial court concluded, therefore, that there existed two conditions precedent to the guarantors' duty to make payments: (1) default of Food Giant and (2) the existence of the Food Giant sublease. This brings into issue the question of whether the guaranty agreement was absolute or conditional. If only the first condition was to be met, the guaranty was an absolute one. If both conditions were to be satisfied before it became operable, the guaranty was conditional. As was said in *Robey v. Walton Lumber Co.,* 17 Wn.2d 242, 135 P.2d 95, 145 A.L.R. 924 (1943):

> "The contract of guaranty may be absolute or it may be conditional. An absolute guaranty is an unconditional undertaking on the part of the guarantor that the debtor will pay the debt or perform the obligation. A conditional guaranty contemplates, as a condition to liability on the part of the guarantor, the happening of some contingent event *other than the default of the principal debtor* or the performance of some act on the part of the obligee. Where the guaranty is conditional, the obligation of the guarantor may not be enforced unless the event has occurred or the act has been performed. . . . (Italics ours.)
>
> "A guaranty of the payment of an obligation, without words of limitation or condition, is construed as an absolute or unconditional guaranty." 24 Am. Jur. 885, § 16.

See also 38 Am. Jur. 2d, *Guaranty,* § 21.

■ The determination of this issue must be based upon a reading of the guaranty in connection with the surrounding documents. *Sherman, Clay & Co. v. Turner,* 164 Wash. 257, 2 P.2d 688 (1931). Proper interpretation and construction of the agreement is based upon the same principles as those applied to contracts generally. *Fischler v. Nicklin,* 51 Wn.2d 518, 319 P.2d 1098; Restatement of Security § 88 (1941). The guaranty agreement was a legal and binding contract based upon a valid consideration. *Fruehauf Trailer Co. of Canada, Ltd. v. Chandler,* 67 Wn.2d 704, 409 P.2d 651

(1966). It was an independent undertaking separate and apart from the Food Giant sublease. *Coughlin v. Smith,* 163 Wash. 290, 1 P.2d 215 (1931). The agreement did not contain words of condition or limitation, but to make it operable required only that there be nonpayment of an amount identified as the difference between the monthly sum called for in the lease and that in the sublease.

The trial court concluded that the nonpayment was a default after the manner of a failure of rental payments in a lease between two parties. That is an entirely different situation. Generally, the extinguishment of a lease discharges liability for future rent; *Kelley v. von Herberg,* 184 Wash. 165, 50 P.2d 23 (1935), but in this case the guaranty was of a portion of the rental called for in the lease between Giant Land and Arden Farms, which lease is still in existence. The contract of guaranty sued upon was absolute and respondent's obligation to perform began with and continues during the period of nonpayment on the full rental required in the Giant Land-Arden Farms lease. *Fischler v. Nicklin, supra; Robey v. Walton Lumber Co., supra; Sherman, Clay & Co. v. Turner, supra.*

█ Respondents contend that Arden Farms should be required to pay $5,400 per month. They observe in their brief that the lease, sublease and amendments thereto leading to the guaranty were exceedingly complicated. They state that the documents are silent as to what rental Arden Farms should pay if the sublease were terminated and it operated the premises, but contend it was never contemplated that Arden Farms would take over the store at a rental of $4,853 per month. This may be so, but the provisions in the various instruments of the first transaction are an aid to the interpretation of the guaranty agreement only insofar as the parties to the guaranty were aware of them. *American Pipe & Constr. Co. v. Harbor Constr. Co.,* 51 Wn.2d 258, 317 P.2d 521 (1957). Since the guaranty agreement was between appellant's predecessor in interest and respondents, none of whom were parties to the first transaction, that agreement must be considered only from the

viewpoint of those parties at the time of its execution. *Tube-Art Display, Inc. v. Berg*, 37 Wn.2d 1, 221 P.2d 510 (1950); *Vance v. Ingram*, 16 Wn.2d 399, 133 P.2d 938 (1943).

Appellant's predecessor, in approaching the proposed exchange, examined the documents pertaining to the property of Giant Land. One of the most important of these was the basic lease between Giant Land and Arden Farms. The mention of Food Giant in that lease and the execution of the sublease 2 days later, make it reasonable to infer that Arden Farms did not intend to operate the supermarket. The language of the lease did not, however, import that this intention was to continue for the life of the lease. Rather Edgewater, appellant's predecessor, could reasonably draw a contrary view from the following provisions:

5. *Assignment and Subletting.* Lessee shall have the right to sublease the demised premises to Food Giant Aurora Co., a Washington corporation, or in the event of default by Food Giant Aurora Co., to such other sublessee as Lessee may determine. Any sublease shall be expressly conditioned upon its reciting that it is subject to all of the terms and conditions of the instant lease.

. . .

6. *Use of Premises.* The leased premises are to be used by Lessee for the purpose of conducting therein and thereon a wholesale and retail grocery, meat, produce, and supermarket, and for such other allied and related businesses as may from time to time be approved by the Lessor.

If these provisions are read in conjunction with the terms of the agreement between Giant Land and Arden Farms above set forth, a serious question is raised, at the very least, as to Arden Farms' obligation to pay anything over $4,853 per month rental. Arden Farms initially agreed to pay $5,175 per month. There was then the change in rental, with the addition of taxes, insurance and assessments. As has been related, this modification was to assist Giant Land in the refinancing of its mortgage. Since Arden Farms is not a party to this action, we do not know what its position

would be, although we doubt it would pay, without objection, rental of $5,400 per month, plus taxes, insurance and assessments. There was enough of a question to make it reasonable for the prospective purchaser to demand a guaranty of that portion of the rental payments which were to come from Food Giant before it would exchange the properties.

The correspondence between the parties to the guaranty agreement above quoted refer to the lessee's obligation as "Arden Farms guaranteed lease payment" and "Arden Farms Co. guarantee of $4,853 per month." These statements are a clear expression of the parties that they understood the Arden Farms rental to be guaranteed only to $4,853 per month. We believe that this understanding was carried into the guaranty agreement.

The judgment is reversed, and the cause remanded with instructions to enter judgment for appellant in accordance with the prayer of its complaint.

HOROWITZ, A. C. J., and UTTER, J., concur.

Petition for rehearing denied July 6, 1970.